# FMC CORP. *v.* HOLLIDAY

No. 89–1048.   Argued October 2, 1990—Decided November 27, 1990

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, MARSHALL, BLACKMUN, SCALIA, and KENNEDY, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 65. SOUTER, J., took no part in the consideration or decision of the case.

*H. Woodruff Turner* argued the cause for petitioner. With him on the briefs was *Charles Kelly*.

*Deputy Solicitor General Shapiro* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr, Christopher J. Wright, Allen H. Feldman, Steven J. Mandel*, and *Mark S. Flynn*.

*Charles Rothfeld* argued the cause for respondent. On the brief were *Thomas G. Johnson* and *David A. Cicola*.*

---

*Briefs of *amici curiae* urging reversal were filed for the Central States, Southeast and Southwest Area Health and Welfare Fund by *Anita*

JUSTICE O'CONNOR delivered the opinion of the Court.

This case calls upon the Court to decide whether the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U. S. C. § 1001 *et seq.*, pre-empts a Pennsylvania law precluding employee welfare benefit plans from exercising subrogation rights on a claimant's tort recovery.

I

Petitioner, FMC Corporation (FMC), operates the FMC Salaried Health Care Plan (Plan), an employee welfare benefit plan within the meaning of ERISA, § 3(1), 29 U. S. C. § 1002(1), that provides health benefits to FMC employees and their dependents. The Plan is self-funded; it does not purchase an insurance policy from any insurance company in order to satisfy its obligations to its participants. Among its provisions is a subrogation clause under which a Plan member agrees to reimburse the Plan for benefits paid if the member recovers on a claim in a liability action against a third party.

Respondent, Cynthia Ann Holliday, is the daughter of FMC employee and Plan member Gerald Holliday. In 1987,

M. D'Arcy, James L. Coghlan, and William J. Nellis; for the Chamber of Commerce of the United States of America by Harry A. Rissetto, E. Carl Uehlein, Jr., and Stephen A. Bokat; for the National Coordinating Committee for Multiemployer Plans by Gerald M. Feder, David R. Levin, and Diana L. S. Peters; for the Teamsters Health and Welfare Fund of Philadelphia & Vicinity et al. by James D. Crawford, James J. Leyden, Henry M. Wick, Jr., and Jack G. Mancuso; and for Travelers Insurance Co. by A. Raymond Randolph, M. Duncan Grant, and Waltraut S. Addy.

Briefs of amici curiae urging affirmance were filed for the American Chiropractic Association by George P. McAndrews and Robert C. Ryan; for the American Optometric Association by Ellis Lyons, Bennett Boskey, and Edward A. Groobert; for the National Conference of State Legislatures et al. by Benna Ruth Solomon and Charles Rothfeld; and for the Pennsylvania Trial Lawyers Association by John Patrick Lydon.

Briefs of amici curiae were filed for the American Podiatric Medical Association by Werner Strupp; and for the Self-Insurance Institute of America, Inc., by George J. Pantos.

she was seriously injured in an automobile accident. The Plan paid a portion of her medical expenses. Gerald Holliday brought a negligence action on behalf of his daughter in Pennsylvania state court against the driver of the automobile in which she was injured. The parties settled the claim. While the action was pending, FMC notified the Hollidays that it would seek reimbursement for the amounts it had paid for respondent's medical expenses. The Hollidays replied that they would not reimburse the Plan, asserting that § 1720 of Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. § 1720 (1987), precludes subrogation by FMC. Section 1720 states that "[i]n actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to . . . benefits . . . payable under section 1719."[1] Section 1719 refers to benefit payments by "[a]ny program, group contract or other arrangement."[2]

---

[1] Section 1720 of Pennsylvania's Motor Vehicle Financial Responsibility Law is entitled "[s]ubrogation" and provides:

"In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits in lieu thereof paid or payable under section 1719 (relating to coordination of benefits)."

[2] Section 1719, entitled "[c]oordination of benefits," reads:

"(a) General rule. — Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. Any program, group contract or other arrangement for payment of benefits such as described in section 1711 (relating to required benefits), 1712(1) and (2) (relating to availability of benefits) or 1715 (relating to availability of adequate limits) shall be construed to contain a provision that all benefits provided therein shall be in excess of and not in duplication of any valid and collectible first party benefits provided in section 1711, 1712 or 1715 or workers' compensation.

"(b) Definition. — As used in this section the term 'program, group contract or other arrangement' includes, but is not limited to, benefits payable by a hospital plan corporation or a professional health service corporation

Petitioner, proceeding in diversity, then sought a declaratory judgment in Federal District Court. The court granted respondent's motion for summary judgment, holding that § 1720 prohibits FMC's exercise of subrogation rights on Holliday's claim against the driver. The United States Court of Appeals for the Third Circuit affirmed. 885 F. 2d 79 (1989). The court held that § 1720, unless pre-empted, bars FMC from enforcing its contractual subrogation provision. According to the court, ERISA pre-empts § 1720 if ERISA's "deemer clause," § 514(b)(2)(B), 29 U. S. C. § 1144(b)(2)(B), exempts the Plan from state subrogation laws. The Court of Appeals, citing *Northern Group Services, Inc.* v. *Auto Owners Ins. Co.*, 833 F. 2d 85, 91–94 (CA6 1987), cert. denied, 486 U. S. 1017 (1988), determined that "the deemer clause [was] meant mainly to reach back-door attempts by states to regulate core ERISA concerns in the guise of insurance regulation." 885 F. 2d, at 86. Pointing out that the parties had not suggested that the Pennsylvania antisubrogation law addressed "a core type of ERISA matter which Congress sought to protect by the preemption provision," *id.*, at 90, the court concluded that the Pennsylvania law is not pre-empted. The Third Circuit's holding conflicts with decisions of other Courts of Appeals that have construed ERISA's deemer clause to protect self-funded plans from all state insurance regulation. See, *e. g.*, *Baxter* v. *Lynn*, 886 F. 2d 182, 186 (CA8 1989); *Reilly* v. *Blue Cross and Blue Shield United of Wisconsin*, 846 F. 2d 416, 425–426 (CA7), cert. denied, 488 U. S. 856 (1988). We granted certiorari to resolve this conflict, 493 U. S. 1068 (1990), and now vacate and remand.

## II

In determining whether federal law pre-empts a state statute, we look to congressional intent. "'Pre-emption may be either express or implied, and "is compelled whether Con-

---

subject to 40 Pa. C. S. Ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health services plan corporations)."

gress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'"" *Shaw* v. *Delta Air Lines, Inc.*, 463 U. S. 85, 95 (1983) (quoting *Fidelity Federal Savings & Loan Assn.* v. *De la Cuesta*, 458 U. S. 141, 152–153 (1982), in turn quoting *Jones* v. *Rath Packing Co.*, 430 U. S. 519, 525 (1977)); see also *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842–843 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress" (footnote omitted)). We "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc.* v. *Dollar Park and Fly, Inc.*, 469 U. S. 189, 194 (1985). Three provisions of ERISA speak expressly to the question of pre-emption:

> "Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." § 514(a), as set forth in 29 U. S. C. § 1144(a) (pre-emption clause).

> "Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." § 514(b)(2)(A), as set forth in 29 U. S. C. § 1144(b)(2)(A) (saving clause).

> "Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or

investment companies." §514(b)(2)(B), 29 U. S. C. §1144(b)(2)(B) (deemer clause).

We indicated in *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U. S. 724 (1985), that these provisions "are not a model of legislative drafting." *Id.*, at 739. Their operation is nevertheless discernible. The pre-emption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit plan governed by ERISA. The saving clause returns to the States the power to enforce those state laws that "regulat[e] insurance," except as provided in the deemer clause. Under the deemer clause, an employee benefit plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies or insurance contracts.

## III

Pennsylvania's antisubrogation law "relate[s] to" an employee benefit plan. We made clear in *Shaw* v. *Delta Air Lines, supra,* that a law relates to an employee welfare plan if it has "a connection with or reference to such a plan." *Id.*, at 96–97 (footnote omitted). We based our reading in part on the plain language of the statute. Congress used the words "'relate to' in §514(a) [the pre-emption clause] in their broad sense." *Id.*, at 98. It did not mean to pre-empt only state laws specifically designed to affect employee benefit plans. That interpretation would have made it unnecessary for Congress to enact ERISA §514(b)(4), 29 U. S. C. §1144(b)(4), which exempts from pre-emption "generally" applicable criminal laws of a State. We also emphasized that to interpret the pre-emption clause to apply only to state laws dealing with the subject matters covered by ERISA, such as reporting, disclosure, and fiduciary duties, would be incompatible with the provision's legislative history because the House and Senate versions of the bill that became ERISA

contained limited pre-emption clauses, applicable only to state laws relating to specific subjects covered by ERISA.[3] These were rejected in favor of the present language in the Act, "indicat[ing] that the section's pre-emptive scope was as broad as its language." *Shaw* v. *Delta Air Lines*, 463 U. S., at 98.

Pennsylvania's antisubrogation law has a "reference" to benefit plans governed by ERISA. The statute states that "[i]n actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to . . . benefits . . . paid or payable under section 1719." 75 Pa. Cons. Stat. § 1720 (1987). Section 1719 refers to "[a]ny program, group contract or other arrangement for payment of benefits." These terms "includ[e], *but [are] not limited to*, benefits payable by a hospital plan corporation or a professional health service corporation." § 1719 (emphasis added).

The Pennsylvania statute also has a "connection" to ERISA benefit plans. In the past, we have not hesitated to apply ERISA's pre-emption clause to state laws that risk subjecting plan administrators to conflicting state regulations. See, *e. g., Shaw* v. *Delta Air Lines, supra,* at 95–100 (state laws making unlawful plan provisions that discriminate on the basis of pregnancy and requiring plans to provide specific benefits "relate to" benefit plans); *Alessi* v. *Raybestos-*

---

[3] The bill introduced in the Senate and reported out of the Committee on Labor and Public Welfare would have pre-empted "any and all laws of the States and of political subdivisions thereof insofar as they may now or hereafter relate to the subject matters regulated by this Act." S. 4, 93d Cong., 1st Sess., § 609(a) (1973). As introduced in the House, the bill that became ERISA would have superseded "any and all laws of the States and of the political subdivisions thereof insofar as they may now or hereafter relate to the fiduciary, reporting, and disclosure responsibilities of persons acting on behalf of employee benefit plans." H. R. 2, 93d Cong., 1st Sess., § 114 (1973). The bill was approved by the Committee on Education and Labor in a slightly modified form. See H. R. 2, 93d Cong., 1st Sess., § 514(a) (1973).

*Manhattan, Inc.*, 451 U. S. 504, 523–526 (1981) (state law prohibiting plans from reducing benefits by amount of workers' compensation awards "relate[s] to" employee benefit plan). To require plan providers to design their programs in an environment of differing state regulations would complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits. See *Fort Halifax Packing Co.* v. *Coyne*, 482 U. S. 1, 10 (1987). Thus, where a "patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation," we have applied the pre-emption clause to ensure that benefit plans will be governed by only a single set of regulations. *Id.*, at 11.

Pennsylvania's antisubrogation law prohibits plans from being structured in a manner requiring reimbursement in the event of recovery from a third party. It requires plan providers to calculate benefit levels in Pennsylvania based on expected liability conditions that differ from those in States that have not enacted similar antisubrogation legislation. Application of differing state subrogation laws to plans would therefore frustrate plan administrators' continuing obligation to calculate uniform benefit levels nationwide. Accord, *Alessi* v. *Raybestos-Manhattan, Inc., supra* (state statute prohibiting offsetting worker compensation payments against pension benefits pre-empted since statute would force employer either to structure all benefit payments in accordance with state statute or adopt different payment formulae for employers inside and outside State). As we stated in *Fort Halifax Packing Co.* v. *Coyne, supra*, at 9, "[t]he most efficient way to meet these [administrative] responsibilities is to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits."

There is no dispute that the Pennsylvania law falls within ERISA's insurance saving clause, which provides, *"[e]xcept as provided in [the deemer clause],* nothing in this sub-

chapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance," § 514(b)(2)(A), 29 U. S. C. § 1144(b)(2)(A) (emphasis added). Section 1720 directly controls the terms of insurance contracts by invalidating any subrogation provisions that they contain. See *Metropolitan Life Ins. Co.* v. *Massachusetts,* 471 U. S., at 740–741. It does not merely have an impact on the insurance industry; it is aimed at it. See *Pilot Life Ins. Co.* v. *Dedeaux,* 481 U. S. 41, 50 (1987). This returns the matter of subrogation to state law. Unless the statute is excluded from the reach of the saving clause by virtue of the deemer clause, therefore, it is not pre-empted.

We read the deemer clause to exempt self-funded ERISA plans from state laws that "regulat[e] insurance" within the meaning of the saving clause. By forbidding States to deem employee benefit plans "to be an insurance company or other insurer . . . or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance." As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation "relate[s] to" the plans. State laws directed toward the plans are pre-empted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation. An insurance company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.

Our reading of the deemer clause is consistent with *Metropolitan Life Ins. Co.* v. *Massachusetts, supra.* That case involved a Massachusetts statute requiring certain self-funded benefit plans and insurers issuing group health policies to plans to provide minimum mental health benefits. *Id.*, at 734. In pointing out that Massachusetts had never tried to enforce the portion of the statute pertaining directly to benefit plans, we stated, "[i]n light of ERISA's 'deemer clause,' which states that a benefit plan shall not 'be deemed an insurance company' for purposes of the insurance saving clause, Massachusetts has never tried to enforce [the statute] as applied to benefit plans directly, effectively conceding that such an application of [the statute] would be pre-empted by ERISA's pre-emption clause." *Id.*, at 735, n. 14 (citations omitted). We concluded that the statute, as applied to insurers of plans, was not pre-empted because it regulated insurance and was therefore saved. Our decision, we acknowledged, "results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not." *Id.*, at 747. "By so doing, we merely give life to a distinction created by Congress in the 'deemer clause,' a distinction Congress is aware of and one it has chosen not to alter." *Ibid.* (footnote omitted).

Our construction of the deemer clause is also respectful of the presumption that Congress does not intend to pre-empt areas of traditional state regulation. See *Jones* v. *Rath Packing Co.*, 430 U. S., at 525. In the McCarran-Ferguson Act, 59 Stat. 33, as amended, 15 U. S. C. § 1011 *et seq.*, Congress provided that the "business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U. S. C. § 1012(a). We have identified laws governing the "business of insurance" in the Act to include not only direct regulation of the insurer but also regulation of the substantive terms of insurance contracts. *Metropolitan Life Ins. Co.* v. *Massachusetts, supra*, at 742–744.

By recognizing a distinction between insurers of plans and the contracts of those insurers, which are subject to direct state regulation, and self-insured employee benefit plans governed by ERISA, which are not, we observe Congress' presumed desire to reserve to the States the regulation of the "business of insurance."

Respondent resists our reading of the deemer clause and would attach to it narrower significance. According to the deemer clause, "[n]either an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State *purporting* to regulate insurance companies [or] insurance contracts." § 514(b)(2)(B), 29 U. S. C. § 1144(b)(2)(B) (emphasis added). Like the Court of Appeals, respondent would interpret the deemer clause to except from the saving clause only state insurance regulations that are pretexts for impinging upon core ERISA concerns. The National Conference of State Legislatures et al. as *amici curiae* in support of respondent offer an alternative interpretation of the deemer clause. In their view, the deemer clause precludes States from deeming plans to be insurers only for purposes of state laws that apply to insurance as a business, such as laws relating to licensing and capitalization requirements.

These views are unsupported by ERISA's language. Laws that *purportedly* regulate insurance companies or insurance contracts are laws having the "appearance of" regulating or "intending" to regulate insurance companies or contracts. Black's Law Dictionary 1236 (6th ed. 1990). Congress' use of the word does not indicate that it directed the deemer clause solely at deceit that it feared state legislatures would practice. Indeed, the Conference Report, in describing the deemer clause, omits the word "purporting," stating, "an employee benefit plan is not to be considered as an insurance company, bank, trust company, or investment

company (and is not to be considered as engaged in the business of insurance or banking) for purposes of any State law that regulates insurance companies, insurance contracts, banks, trust companies, or investment companies." H. R. Conf. Rep. No. 93–1280, p. 383 (1974).

Nor, in our view, is the deemer clause directed solely at laws governing the business of insurance. It is plainly directed at "any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." §514(b)(2)(B), 29 U. S. C. §1144(b)(2)(B). Moreover, it is difficult to understand why Congress would have included *insurance contracts* in the pre-emption clause if it meant only to pre-empt state laws relating to the operation of insurance as a business. To be sure, the saving and deemer clauses employ differing language to achieve their ends—the former saving, except as provided in the deemer clause, "any law of any State which regulates insurance" and the latter referring to "any law of any State purporting to regulate insurance companies [or] insurance contracts." We view the language of the deemer clause, however, to be either coextensive with or broader, not narrower, than that of the saving clause. Our rejection of a restricted reading of the deemer clause does not lead to the deemer clause's engulfing the saving clause. As we have pointed out, *supra*, at 62–63, the saving clause retains the independent effect of protecting state insurance regulation of insurance contracts purchased by employee benefit plans.

Congress intended by ERISA to "establish pension plan regulation as exclusively a federal concern." *Alessi* v. *Raybestos-Manhattan, Inc.*, 451 U. S., at 523 (footnote omitted). Our interpretation of the deemer clause makes clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the State may not regulate it. As a result, employers will not face "'conflicting or inconsistent State and local regulation of employee benefit plans.'"

*Shaw* v. *Delta Air Lines, Inc.*, 463 U. S., at 99 (quoting remarks of Sen. Williams). A construction of the deemer clause that exempts employee benefit plans from only those state regulations that encroach upon core ERISA concerns or that apply to insurance as a business would be fraught with administrative difficulties, necessitating definition of core ERISA concerns and of what constitutes business activity. It would therefore undermine Congress' desire to avoid "endless litigation over the validity of State action," see 120 Cong. Rec. 29942 (1974) (remarks of Sen. Javits), and instead lead to employee benefit plans' expenditure of funds in such litigation.

In view of Congress' clear intent to exempt from direct state insurance regulation ERISA employee benefit plans, we hold that ERISA pre-empts the application of § 1720 of Pennsylvania's Motor Vehicle Financial Responsibility Law to the FMC Salaried Health Care Plan. We therefore vacate the judgment of the United States Court of Appeals for the Third Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*


JUSTICE SOUTER took no part in the consideration or decision of this case.


JUSTICE STEVENS, dissenting.

The Court's construction of the statute draws a broad and illogical distinction between benefit plans that are funded by the employer (self-insured plans) and those that are insured by regulated insurance companies (insured plans). Had Congress intended this result, it could have stated simply that "all State laws are pre-empted insofar as they relate to any self-insured employee plan." There would then have been no need for the "saving clause" to exempt state insurance laws from the pre-emption clause, or the "deemer clause," which the Court today reads as merely reinjecting

into the scope of ERISA's pre-emption clause those same exempted state laws insofar as they relate to self-insured plans.

From the standpoint of the beneficiaries of ERISA plans — who after all are the primary beneficiaries of the entire statutory program—there is no apparent reason for treating self-insured plans differently from insured plans. Why should a self-insured plan have a right to enforce a subrogation clause against an injured employee while an insured plan may not? The notion that this disparate treatment of similarly situated beneficiaries is somehow supported by an interest in uniformity is singularly unpersuasive. If Congress had intended such an irrational result, surely it would have expressed it in straightforward English. At least one would expect that the reasons for drawing such an apparently irrational distinction would be discernible in the legislative history or in the literature discussing the legislation.

The Court's anomalous result would be avoided by a correct and narrower reading of either the basic pre-emption clause or the deemer clause.

I .

The Court has endorsed an unnecessarily broad reading of the words "relate to any employee benefit plan" as they are used in the basic pre-emption clause of § 514(a). I acknowledge that this reading is supported by language in some of our prior opinions. It is not, however, dictated by any prior holding, and I am persuaded that Congress did not intend this clause to cut nearly so broad a swath in the field of state laws as the Court's expansive construction will create.

The clause surely does not pre-empt a host of general rules of tort, contract, and procedural law that relate to benefit plans as well as to other persons and entities. It does not, for example, pre-empt general state garnishment rules insofar as they relate to ERISA plans. *Mackey* v. *Lanier Collection Agency & Service, Inc.*, 486 U. S. 825 (1988). Moreover, the legislative history of the provision indicates that

throughout most of its consideration of pre-emption, Congress was primarily concerned about areas of possible overlap between federal and state requirements. Thus, the bill that was introduced in the Senate would have pre-empted state laws insofar as they "relate to the subject matters regulated by this Act,"[1] and the House bill more specifically identified state laws relating "to the fiduciary, reporting, and disclosure responsibilities of persons acting on behalf of employee benefit plans."[2] Although the compromise that produced the statutory language "relate to any employee benefit plan" is not discussed in the legislative history, the final version is perhaps best explained as an editorial amalgam of the two bills rather than as a major expansion of the section's coverage.

When there is ambiguity in a statutory provision pre-empting state law, we should apply a strong presumption against the invalidation of well-settled, generally applicable state rules. In my opinion this presumption played an important role in our decisions in *Fort Halifax Packing Co.* v. *Coyne*, 482 U. S. 1 (1987), and *Mackey* v. *Lanier Collection Agency & Service, Inc.*, *supra*. Application of that presumption leads me to the conclusion that the pre-emption clause should apply only to those state laws that purport to regulate subjects regulated by ERISA or that are inconsistent with ERISA's central purposes. I do not think Congress intended to foreclose Pennsylvania from enforcing the anti-subrogation provisions of its state Motor Vehicle Financial Responsibility Law against ERISA plans—most certainly, it did not intend to pre-empt enforcement of that statute against self-insured plans while preserving enforcement against insured plans.

---

[1] S. 4, 93d Cong., 1st Sess., § 609(a) (1973), reprinted at 1 Legislative History of the Employee Retirement Income Security Act of 1974 (Committee Print compiled by the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare) 93, 186 (1976) (Leg. Hist.).

[2] H. R. 2, 93d Cong., 1st Sess., § 114 (1973); 1 Leg. Hist. 51.

68

## II

Even if the "relate to" language in the basic pre-emption clause is read broadly, a proper interpretation of the carefully drafted text of the deemer clause would caution against finding pre-emption in this case. Before identifying the key words in that text, it is useful to comment on the history surrounding enactment of the deemer clause.

The number of self-insured employee benefit plans grew dramatically in the 1960's and early 1970's.[3] The question whether such plans were, or should be, subject to state regulation remained unresolved when ERISA was enacted. It was, however, well recognized as early as 1967 that requiring self-insured plans to comply with the regulatory requirements in state insurance codes would stifle their growth:

> "Application of state insurance laws to uninsured plans would make direct payment of benefits pointless and in most cases not feasible. This is because a welfare plan would have to be operated as an insurance company in order to comply with the detailed regulatory requirements of state insurance codes designed with the typical operations of insurance companies in mind. It presumably would be necessary to form a captive insurance company with prescribed capital and surplus, capable of obtaining a certificate of authority from the insurance department of all states in which the plan was 'doing business,' establish premium rates subject to approval by the insurance department, issue policies in the form approved by the insurance department, pay commissions and premium taxes required by the insurance law, hold and deposit reserves established by the insurance department, make investments permitted under the law, and comply with all filing and examination requirements of the insurance department. The result would be to re-

---

[3] See Comment, State Regulation of Noninsured Employee Welfare Benefit Plans, 62 Geo. L. J. 339, 340 (1973).

introduce an insurance company, which the direct payment plan was designed to dispense with. Thus it can be seen that the real issue is not whether uninsured plans are to be *regulated* under state insurance laws, but whether they are to be *permitted.*" Goetz, Regulation of Uninsured Employee Welfare Plans Under State Insurance Laws, 1967 Wis. L. Rev. 319, 320–321 (emphasis in original).

In 1974 while ERISA was being considered in Congress, the first state court to consider the applicability of state insurance laws to self-insured plans held that a self-insured plan could not pay out benefits until it had satisfied the licensing requirements governing insurance companies in Missouri and thereby had subjected itself to the regulations contained in the Missouri insurance code. *Missouri* v. *Monsanto Co.*, Cause No. 259774 (St. Louis Cty. Cir. Ct., Jan. 4, 1973), rev'd, 517 S. W. 2d 129 (Mo. 1974). Although it is true that the legislative history of ERISA or the deemer clause makes no reference to the Missouri case, or to this problem—indeed, it contains no explanation whatsoever of the reason for enacting the deemer clause—the text of the clause itself plainly reveals that it was designed to protect pension plans from being subjected to the detailed regulatory provisions that typically apply to all state-regulated insurance companies—laws that purport to regulate insurance companies and insurance contracts.

The key words in the text of the deemer clause are "deemed," "insurance company," and "purporting."[4] It pro-

---

[4] Section 514(b)(2)(B), as set forth in 29 U. S. C. § 1144(b)(2)(B), provides:

"Neither an employee benefit plan . . . nor any trust established under such a plan, shall be *deemed* to be an *insurance company* or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State *purporting* to *regulate insurance companies*, insurance contracts, banks, trust companies, or investment companies." (Emphasis added.)

vides that an employee welfare plan shall not be *deemed* to be an *insurance company* or to be engaged in the business of insurance for the purpose of determining whether it is an entity that is regulated by any state law *purporting* to regulate *insurance companies* and insurance contracts.

Pennsylvania's insurance code purports, in so many words, to regulate insurance companies and insurance contracts. It governs the certification of insurance companies, Pa. Stat. Ann., Tit. 40, § 400 (Purdon 1971), their minimum capital stock and financial requirements to do business, § 386 (Purdon 1971 and Supp. 1990–1991), their rates, *e. g.*, § 532.9 (Purdon 1971) (authorizing Insurance Commissioner to regulate minimum premiums charged by life insurance companies), and the terms that insurance policies must, or may, include, *e. g.*, § 510 (Purdon 1971 and Supp. 1990–1991) (life insurance policies), § 753 (Purdon 1971) (health and accident insurance policies). The deemer clause prevents a State from enforcing such laws purporting to regulate insurance companies and insurance contracts against ERISA plans merely by deeming ERISA plans to be insurance companies. But the fact that an ERISA plan is not deemed to be an insurance company for the purpose of deciding whether it must comply with a statute that purports to regulate "insurance contracts" or entities that are defined as "insurance companies" simply does not speak to the question whether it must nevertheless comply with a statute that expressly regulates subject matters other than insurance.

There are many state laws that apply to insurance companies as well as to other entities. Such laws may regulate some aspects of the insurance business, but do not require one to be an insurance company in order to be subject to their terms. Pennsylvania's Motor Vehicle Financial Responsibility Law is such a law. The fact that petitioner's plan is not deemed to be an insurance company or an insurance contract does not have any bearing on the question whether peti-

tioner, like all other persons, must nevertheless comply with the Motor Vehicle Financial Responsibility Law.

If one accepts the Court's broad reading of the "relate to" language in the basic pre-emption clause, the answer to the question whether petitioner must comply with state laws regulating entities including, but not limited to, insurance companies depends on the scope of the saving clause.[5]  In this case, I am prepared to accept the Court's broad reading of that clause, but it is of critical importance to me that the category of state laws described in the saving clause is broader than the category described in the deemer clause. A state law "which regulates insurance," and is therefore exempted from ERISA's pre-emption provision by operation of the saving clause, does not necessarily have as its purported subject of regulation an "insurance company" or an activity that is engaged in by persons who are insurance companies. Rather, such a law may aim to regulate another matter altogether, but also have the effect of regulating insurance. The deemer clause, by contrast, reinjects into the scope of ERISA pre-emption only those state laws that "purport to" regulate insurance companies or contracts—laws such as those which set forth the licensing and capitalization requirements for insurance companies or the minimum required provisions in insurance contracts.  While the saving clause thus exempts from the pre-emption clause all state laws that have the broad effect of regulating insurance, the deemer clause simply allows pre-emption of those state laws that expressly regulate insurance and that would therefore be applicable to ERISA plans only if States were allowed to deem such plans to be insurance companies.

---

[5] Section 514(b)(2)(A), as set forth in 29 U. S. C. § 1144(b)(2)(A), provides:

"Except as provided in subparagraph (B) nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

Pennsylvania's Motor Vehicle Financial Responsibility Law fits into the broader category of state laws that fall within the saving clause only. The Act regulates persons in addition to insurance companies and affects subrogation and indemnity agreements that are not necessarily insurance contracts. Yet because it most assuredly is not a law "purporting" to regulate any of the entities described in the deemer clause—"insurance companies, insurance contracts, banks, trust companies, or investment companies," the deemer clause does not by its plain language apply to this state law. Thus, although the Pennsylvania law is exempted from ERISA's pre-emption provision by the broad saving clause because it "regulates insurance," it is not brought back within the scope of ERISA pre-emption by operation of the narrower deemer clause. I therefore would conclude that petitioner is subject to Pennsylvania's Motor Vehicle Financial Responsibility Law.

I respectfully dissent.