The Honorable Ed Gilbert State Representative P.O. Box 633 Mountain Home, AR 72653
Dear Representative Gilbert:
This is in response to your request for an opinion regarding the legality of Senate Bill 235, entitled "An Act to Ensure that Patients Have the Right to Select the Pharmacy or Pharmacist of their Choice with Certain Limitations." The proposed bill provides, in pertinent part:
 Section 3. A health insurance plan, policy or health maintenance organization may not:
 (a) prohibit or limit in the state of Arkansas any person who is a participant or beneficiary of the policy or plan from selecting a pharmacy or pharmacist of his choice who has agreed to participate in the plan according to the terms offered by the insurer, or
 (b) deny a pharmacy or pharmacist the right to participate as a contract provider under the policy or plan if the pharmacy or pharmacist agrees to provide pharmacy services, including but not limited to prescription drugs, that meet the terms and requirements set forth by the insurer under the policy or plan and agrees to the terms of reimbursement set forth by the insurer.
The proposed Act applies to medical benefit contracts, health care centers, insurance companies and health maintenance organizations that provide coverage for prescription drugs. However, the bill specifically exempts from its coverage "health maintenance organizations which are both state certified and federally qualified and self-insured plans under the Employee Retirement Income Security Act of 1974 (ERISA)." (Senate Bill 235, Section 6). Specifically, you have asked us to determine whether the bill is anti-competitive and whether the exemption referred to above creates an unconstitutional classification.
In determining whether the proposed legislation is anti-competitive, we must consult the federal and state anti-trust laws. The proposed Act does not appear to violate the Arkansas Constitutional prohibition against monopolies. See
Ark. Const. art. 2, § 19. The remaining anti-trust laws are directed toward the anti-competitive acts of the private sector, including persons, partnerships, and corporations, as opposed to governmental action.[1] Because Senate Bill 235, if enacted, would represent governmental action, it may not be in actual violation of these anti-trust provisions. It may, however, operate in contravention of the spirit and objectives of these provisions. (Of course, to the extent that the bill conflicts with the Arkansas Unfair Practices Act, it would be deemed to amend that Act.) In my opinion, the bill has an anti-competitive effect contrary to the spirit of these laws.
The staff of the Bureau of Competition of the Federal Trade Commission has issued advisory opinions regarding the anticompetitiveness of similar legislation proposed in Massachusetts and Pennsylvania.[2] According to these opinions, competition among health care prepayment programs and among health care providers can enhance consumer choice, as well as the availability of services, while lowering the overall cost of health care. The use by prepaid health care programs of limited panels of health care providers appears to be an effective means of promoting competition among such providers. Currently, pharmacies compete for the business represented by prepaid health care programs by seeking arrangements with these programs that give them preferential or exclusive access to the program's subscribers. This assures the selected pharmacies of greater business volume and permits them to obtain quantity discounts for their large volume purchases, which has the ultimate effect of reducing the cost of prescription drugs to the consumer. Likewise, the lower pharmaceutical costs offered by the contracting pharmacies are reflected in lower premium costs to program subscribers.
An argument can be made that Senate Bill 235 is actually competitive rather than anti-competitive, in that it allows more pharmacists to compete in the market. This argument is based on the Robinson-Patman Discrimination Act, 15 U.S.C.S. § 13 etseq. (1985), which protects competitors from unfair price discrimination. Under this Act, the United States Supreme Court has consistently attacked the predatory pricing practices that result from quantity discount purchasing by large companies, which gives the large company an unfair competitive advantage over the small, independent merchant. See, e.g., AbbottLaboratories v. Portland Retail Druggist, 425 U.S. 1 (1976),United States v. Borden Co., 370 U.S. 460 (1962), and FederalTrade Commission v. Morton Salt Co., 334 U.S. 37 (1948). The prepaid health care industry's current method of contracting with limited providers arguably leads to such condemned predatory pricing practices. Senate Bill 235 would restrict the insurance industry's ability to contract with a limited group of pharmacists, thereby eliminating the threat of price discrimination to the independent pharmacist. While this may cause the bill to appear competitive, the argument that it is actually anti-competitive is stronger. The United States Supreme Court has recognized this tension between the Robinson-Patman Act and the anti-trust laws, stating on numerous occasions that the control of price discrimination under the Robinson-Patman Act poses substantial risks to competition. See, e.g., GreatAtlantic Pacific Tea Co. v. Federal Trade Commission,440 U.S. 69 (1979), United States v. United States Gypsum Co.,438 U.S. 422 (1978). See also Ball Memorial Hospital, Inc. v. MutualHospital Ins., Inc., 784 F.2d 1325 (7th Cir. 1986).
The opinions of the staff of the Federal Trade Commission referred to above acknowledge that, at first glance, legislation requiring freedom of choice of pharmacists and ensuring all pharmacists the opportunity to participate in insurance plans on equal terms appears to be pro-competitive. However, they point out that such legislation restricts the competitive forces outlined above, and may actually reduce competition in the markets for both pharmaceutical services and prepaid health care programs, raise costs to consumers, and restrict consumers' freedom to choose health benefits programs that they believe best meet their needs. Accordingly, it is my opinion that Senate Bill 235 is anti-competitive within the meaning of the anti-trust laws. This presents primarily a policy consideration, however, because, as previously noted, the governmental action represented by the bill would likely remove it from the scope of the federal anti-trust laws.
Regarding the constitutionality of the exemption contained in Section 6 of Senate Bill 235, let me state initially that the exemption of self-insured plans under ERISA (Employee Retirement Income Security Act of 1974) is mandated by the federal pre-emption doctrine. See 29 U.S.C.S. § 1144 (1990). Under this doctrine, the proposed Act would not apply to such plans, regardless of whether they are specifically exempted by Section 6. Thus, to the extent that the exemption includes these plans, it is constitutional. For a more detailed discussion of ERISA's pre-emption of state laws governing self-insured employee benefit plans, see FMC Corp. v. Holliday, 111 S. Ct. 403 (1990). Seealso Opinion No. 88-217, for general information regarding pre-emption under ERISA.
In determining whether the remainder of the exemption, which includes health maintenance organizations (HMO's) that are both state certified and federally qualified, creates an unconstitutional classification, we must refer to the equal protection clause of the Fourteenth Amendment to the United States Constitution. It must be initially noted that equal protection violations are rarely found in cases involving economic regulations, such as Senate Bill 235. New Orleans v.Dukes, 427 U.S. 297 (1976). In Dukes, the United States Supreme Court stated that:
 Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.
The "rational basis test" applied to such economic regulations is noted for its leniency. If a challenged classification is supported by any conceivable rational basis, it withstands constitutional scrutiny.
The challenged classification in Senate Bill 235 is between those HMO's that are both state certified and federally qualified and those that are not. Because state certification is required by all HMO's operating in Arkansas, that distinction is an insignificant aspect of the challenged classification. See
A.C.A. § 23-76-107(a)(1) (1987). That leaves the distinction of being a federally qualified HMO as the real basis for the classification created by this exemption.
Applying the rational basis test to this classification, we must first consider whether the state has a legitimate interest in passing this bill. The state's apparent objective in passing the bill is to provide individuals in Arkansas freedom of choice of pharmacists and to allow Arkansas pharmacists to participate in insurance plans on equal terms. Presumably, the state's interest is legitimate. Next, we must determine whether the classification created by the exemption to the bill is rationally related to this legitimate state interest; in other words, we must determine whether there is a rational basis for exempting federally qualified HMO's from the coverage of this bill.
The asserted rational basis for exempting federally qualified HMO's from this provision is that federal law pre-empts this attempted state regulation of federally qualified HMO's. This federal pre-emption argument is based on 42 U.S.C.S. § 300e-10
(1978), the provision of the Public Health Service Act governing restrictive state laws and practices affecting federally qualified HMO's. This section provides, in pertinent part:
(a) In the case of any entity —
 (1) which cannot do business as a health maintenance organization in a State in which it proposes to furnish basic and supplemental health services because that State by law, regulation, or otherwise —
* * *
 (C) requires that all physicians or a percentage of physicians in the locale participate or be permitted to participate in the provision of services for the entity, or
* * *
 (E) imposes requirements which would prohibit the entity from complying with the requirements of this title, and
 (2) . . . which is a qualified health maintenance organization for purposes of section 1310 [42 U.S.C.S. § 300e-9] . . ., such requirements shall not apply to that entity so as to prevent it from operating as a health maintenance organization in accordance with section 1301 [42 U.S.C.S. § 300e].
42 U.S.C.S. 300e-10 (Supp. 1990).
This provision would pre-empt Senate Bill 235 if the bill applied to physicians,[3] or if it prohibited an HMO from complying with the requirements imposed on federally qualified HMO's under Title XIII of the Public Health Service Act. Because the bill does neither, we cannot conclude that federal law requires the exemption of federally qualified HMO's from its operation. Nevertheless, we recognize that the state may wish to exempt federally qualified HMO's from the provisions of the bill, because of the extensive federal regulation of these HMO's, and because the above-cited provision could be read to discourage all state laws restricting federally qualified HMO's. Accordingly, we conclude that there is a rational basis for exempting federally qualified HMO's from the provisions of Senate Bill 235, and that the classification created by the exemption does not violate the equal protection clause.[4]
In conclusion, while one could argue that Senate Bill 235 is competitive, there is more support for the view that it is anti-competitive. Again, this presents only a policy consideration, because the anti-trust laws do not apply to governmental action. It is also my opinion that the exemption in Section 6 of the bill is constitutional. With regard to your request that we generally review the constitutionality of the other provisions of the bill, we note that a cursory review reveals no obvious constitutional problems. Nevertheless, constitutional issues may arise as the legislation is applied and implemented, and we cannot undertake, in the limited context of this opinion, a thorough review of all constitutional implications of the bill.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Catherine Templeton.
Sincerely,
WINSTON BRYANT Attorney General
WB:arb
[1] See Sherman Anti-Trust Act, 15 U.S.C.A. § 1 et seq.
(1985); Clayton Act, 15 U.S.C.A. § 12 et seq. (1985); Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq. (1975); and the Arkansas Unfair Practices Act, A.C.A. § 4-74-201 et seq.
[2] See Opinion of Bureau of Competition, Federal Trade Commission, to Representative John C. Bartley of Massachusetts, dated May 30, 1989, and Opinion of Staff of Federal Trade Commission, Cleveland Regional Office, to Senator Craig Lewis of Pennsylvania, dated June 29, 1990 (copies enclosed).
[3] See Opinion No. 87-72, concluding to this effect.
[4] In reaching this conclusion, we note that it is neither impossible nor unduly burdensome for HMO's to become federally qualified, thereby exempting themselves from the provisions of this bill.