**SAFECO LIFE INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**Josephine W. MUSSER, in her capacity as Wisconsin Commissioner of Insurance, and the Wisconsin Health Insurance Risk Sharing Plan, Defendants–Appellees.**

No. 94–1657.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1994.

Decided Sept. 12, 1995.

Jonathan Aked (argued), LaFollette & Sinykin, Madison, WI, for Safeco Life Ins. Co.

Warren D. Weinstein (argued), Laura Sutherland, Asst. Attys. Gen., Office of the Attorney General, WI Dept. of Justice, Madison, WI, for Josephine W. Musser.

Laura Sutherland, Asst. Atty. Gen., Office of the Attorney General, WI Dept. of Justice, Madison, WI, for WI Health Ins. Risk Sharing Plan.

Before FERGUSON,* RIPPLE, and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.

Wisconsin imposes fees on health insurers who do business in the state which it uses to provide health insurance to individuals whose physical and mental conditions prevent them from obtaining coverage in the private market. Safeco Life Insurance Company sells stop-loss insurance coverage to a number of Wisconsin employers who sponsor self-funded employee welfare benefit plans, and it is assessed fees by the state based on the sales of that coverage. Safeco has filed this suit seeking a declaration that Wisconsin's scheme is preempted by the Employee Retirement Income and Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), insofar as it applies to insurance sales to employers sponsoring ERISA plans. The district court concluded that the scheme is not preempted by ERISA and that, in any event, the Tax Injunction Act, 28 U.S.C. § 1341, deprived it of subject matter jurisdiction to grant the declaratory relief that Safeco requested. Guided by the Supreme Court's recent decision in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* — U.S. —, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), we agree with the district court that the Wisconsin scheme is not preempted by ERISA and conclude that the defendants are entitled to judgment on that basis.

* The Hon. Warren J. Ferguson, of the Ninth Cir-

## I.

Wisconsin enacted the Health Insurance Risk Sharing Plan in order to make health insurance available to individuals whose physical or mental conditions make it infeasible for them to obtain coverage in the private market. Wisconsin residents who are under the age of 65 are eligible to participate in HIRSP if they are HIV positive or if, due to another physical or mental condition, they have been notified that:

1. Their health insurance has been canceled or their application for insurance has been rejected;
2. Their existing coverage has been modified or limited in a way that substantially reduces the coverage of their policy vis à vis the coverage available to a person considered a standard risk;
3. Their premiums for existing coverage have been increased by fifty percent or more above the amount they have paid previously; or
4. The premiums for a policy not yet in effect have been set at a level fifty percent or more higher than a person considered a standard risk would typically pay.

Wis.Stat. § 619.12(1). Individuals certified as eligible are able to obtain major medical expense insurance through the HIRSP in exchange for the payment of premiums set by the state Commissioner of Insurance. Individuals with limited incomes pay reduced premiums (§ 619.165(1)); the state also provides financial assistance to assist them in paying their premiums as well as their deductibles.

The number of participants in HIRSP has risen markedly from 309 in 1981 to 12,380 in 1992. Given the health status of the individuals eligible to participate in the Plan, the amount in claims paid and the cost of administering the Plan have consistently outstripped the premiums collected. In 1992, for example, HIRSP collected $17,846,040 in premiums, but paid $37,699,824 in claims and incurred $2,168,546 in administrative expenses. To make up for that shortfall, HIRSP each year assesses a fee upon compa-

cuit, sitting by designation.

nies who sell health insurance in Wisconsin. The amount of the fee assessed each insurer is based on the ratio of the company's total health care coverage revenue from Wisconsin residents during the preceding calendar year to the aggregate health care coverage revenue of *all* participating insurers from Wisconsin residents during that year. HIRSP charges an additional fee to insurers who have denied insurance to HIRSP participants.

Safeco, a Washington corporation, has been licensed to write insurance in Wisconsin since 1959. Among other types of policies, Safeco offers stop-loss insurance to employers who sponsor self-funded "employee welfare benefit plans" and "employee benefit plans" as those terms are defined in ERISA. *See* 29 U.S.C. § 1002(1), (3). These plans offer a variety of medical, surgical, hospital, and other benefits to employees in the event of sickness, accident, disability, death, or unemployment. Employers pay the expenses of these plans; but when they purchase stop-loss policies, the insurer pays a portion of the plan's expenses above a certain amount, thus limiting the employer's exposure. According to Safeco, ninety-six percent of all employers with less than 1,000 employees that sponsor self-funded ERISA plans purchase some form of stop-loss coverage.

Based upon the stop-loss policies that Safeco sold to Wisconsin employers from 1988 through 1992, HIRSP assessed the insurer $239,577.93 plus interest. (Safeco was assessed an additional $22,889.15 in August 1993.) Safeco refused to pay the fee, contending that ERISA preempts the provisions of HIRSP insofar as they apply to the insurance policies sold to ERISA plans.[1] It then filed this suit against the Wisconsin Commissioner of Insurance and HIRSP pursuant to 28 U.S.C. §§ 1331, 1332 and 29 U.S.C. § 1132(e)(1), seeking a declaratory judgment to that effect.

On cross-motions for summary judgment, the district court concluded that ERISA did not preempt HIRSP insofar as it applied to insurance policies sold to ERISA plans. Ad-

dressing the threshold question of whether the HIRSP assessments "relate to" an ERISA plan and are therefore (barring any applicable exemption) preempted (*see* 29 U.S.C. § 1144(a)), the court observed:

> The HIRSP assessment as applied to Safeco taxes only Safeco's total health care revenue. It does not make a reference to an employee benefit plan, nor is it connected to an employee benefit plan. The HIRSP assessment is not based on a figure that is connected with the benefits paid from the plan such as percentage of benefits paid to employees in the plan which would merely be an indirect manner of taxing the plan. . . .
>
> .     .     .     .     .
>
> . . . HIRSP assessments do not affect the substantive provisions of the coverage employees receive under their employee benefit plans. [Safeco] asserts that [it] will pass on the cost of HIRSP assessments to the employers who purchase stop-loss insurance. [Safeco] also asserts that employers will pass on the cost of HIRSP assessments to the plans by reducing benefits or by requiring employees to pay a higher share. There is no evidence in the record that the costs will be passed on from employers to the plans. Moreover, where some employers choose to pass the cost of HIRSP assessments to the plans by reducing benefits, this remote effect is not "a connection with or reference to" an employee benefit plan. Any effect is too "remote or tenuous" to "relate to" an employee benefit plan. [Otherwise] there would be no limit to those state laws which would be preempted by ERISA. State regulation of hospitals, which may lead to greater costs for employee benefit plans, does not "relate to" an employee benefit plan, nor does state taxation of an insurer's revenue relate to an employee benefit plan. . . .

Mem. at 8–9 (citation omitted). Even if the HIRSP assessments could be said to "relate to" an employee benefit plan, the court went

---

1. HIRSP also assessed Safeco for policies it sold to other Wisconsin residents. Because those policies had nothing to do with ERISA plans, Safeco does not contest the propriety of the corresponding HIRSP fees and has already paid them.

on to reason, they permissibly "regulate insurance" and thus fall within ERISA's "savings clause," § 1144(b)(2)(A). Mem.Op. at 10. The statute's "deemer clause," § 1144(b)(2)(B)—which provides that employee benefit plans may not be considered an insurance company for purposes of the savings clause—was inapplicable, the court found, because HIRSP does not purport to regulate or tax the plans at all. Instead, HIRSP assessments were imposed in this case on Safeco, which is in fact an insurance company that Wisconsin remains free to regulate under ERISA. Mem. at 12.

Alternatively, the district court opined that it lacked jurisdiction over Safeco's suit in light of the Tax Injunction Act, 28 U.S.C. § 1341, which states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State," and which the Supreme Court has held applicable to suits for declaratory judgment. *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 338, 110 S.Ct. 661, 666, 107 L.Ed.2d 696 (1990); *California v. Grace Brethren Church*, 457 U.S. 393, 408–411, 102 S.Ct. 2498, 2507–09, 73 L.Ed.2d 93 (1982). Although the parties had not raised this issue, the court noted, no one had suggested that Wisconsin did not afford Safeco a "plain, speedy and efficient" means of resolving Safeco's objections to the HIRSP assessment. Consequently, the court·reasoned, the Tax Injunction Act deprived it of jurisdiction over the suit. Mem. at 13–14. *See Ashton v. Cory*, 780 F.2d 816 (9th Cir. 1986) (Kennedy, J.); *contra E–Systems Inc. v. Pogue*, 929 F.2d 1100, 1102 (5th Cir.), *cert. denied*, 502 U.S. 981, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991).

Safeco appeals, renewing its argument that ERISA preempts the HIRSP assessments imposed on the stop-loss policies it has sold to employers sponsoring employee benefit plans and contending that the Tax Injunction Act poses no bar to the declaratory relief it

requests. The jurisdictional character of the latter argument normally would dictate that we address it first. But whether the HIRSP assessments constitute taxes for purposes of the Tax Injunction Act is a question that does not, in our view, lend itself to easy resolution. By contrast, the Supreme Court's decision in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, ——— U.S. ———, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), renders analysis of the preemption issue straightforward. Moreover, it is the defendants, who now invoke the jurisdictional shield of the Tax Injunction Act, that prevail on the merits of the preemption question. Under these circumstances, we find it unnecessary to consider whether the assessments qualify as taxes so as to deprive the court of jurisdiction to grant the declaratory relief that Safeco seeks. *See Norton v. Mathews*, 427 U.S. 524, 532, 96 S.Ct. 2771, 2775–76, 49 L.Ed.2d 672 (1976); *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1316–17 (7th Cir.1995) (collecting cases).[2]

## II.

Our inquiry into preemption begins, as it must, with what Congress has said on that subject. *FMC Corp. v. Holliday*, 498 U.S. 52, 56–57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). "Three provisions of ERISA speak directly to the question of pre-emption." *Id.* at 57, 111 S.Ct. at 407. These include: (1) the "preemption clause," which states that the provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan," except as provided in the "saving clause" (29 U.S.C. § 1144(a) (emphasis supplied)); (2) the "saving clause," which states that "except as provided in [the "deemer clause"], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities" (29 U.S.C. § 1144(b)(2)(A)); and (3) the "deemer

---

2. In addition to its preemption claim, Safeco's complaint included a second count asserting that the HIRSP assessment does not apply to the sale of stop-loss insurance policies. The district court indicated that if it had jurisdiction over the suit,

it would abstain from deciding this state law claim. Mem. at 14–15. Safeco has not pressed the claim on appeal, indicating that it may pursue the matter at a later date in state proceedings. Safeco Opening Br. at 3.

clause," which states that "[n]either an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company, or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies" (29 U.S.C. § 1144(b)(2)(B)). *Holliday*, 498 U.S. at 57–58, 111 S.Ct. at 407. Our inquiry here focuses on whether, for purposes of ERISA's preemption clause, the HIRSP assessments imposed on Safeco for the insurance provided to self-funded employee benefit plans "relate to" those plans. We conclude that they do not, and therefore need not consider the application of the statute's saving and deemer clauses.

Shortly after we heard oral arguments in this case, the Supreme Court granted certiorari in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, — U.S. —, 115 S.Ct. 305, 130 L.Ed.2d 217 (1994).[3] That case involved a series of surcharges that New York imposes on hospital patients not insured by Blue Cross & Blue Shield and on HMOs depending on the number of Medicaid recipients they enroll. Those surcharges are designed, inter alia, to bestow a competitive advantage on Blue Cross/Blue Shield, which insures many individuals to whom commercial insurers would typically refuse to provide coverage, and to HMOs that enroll higher percentages of Medicaid recipients. The Second Circuit concluded that these surcharges "related to" employee benefit plans insofar as they were applied to commercially insured patients whose coverage was purchased through employee benefit plans within the scope of ERISA or to HMOs whose fees are paid by the same types of ERISA plans. *Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 719–21 (2d Cir.1993). By increasing the cost of obtaining insurance or health care other than from Blue Cross/Blue Shield or HMOs with higher Medicaid enrollment, the Second Circuit reasoned, the surcharges "purposefully interfered with the choices that ERISA

plans make for health care coverage." *Id.* at 719. Consequently, the surcharges "related to" employee benefit plans and, because they did not come within ERISA's savings clause, they were preempted insofar as applied to insurance or health care purchased by ERISA plans. *Id.* at 723. In a unanimous opinion authored by Justice Souter, the Supreme Court reversed. — U.S. —, 115 S.Ct. 1671.

The Court began its preemption inquiry with the observation that " '[a] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " — U.S. at —, 115 S.Ct. at 1677 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). The surcharges in no way made reference to an ERISA plan, the Court noted, since they were imposed without regard to whether insurance or HMO enrollment was procured by an ERISA plan, by private purchase, or otherwise. *Id.*

> But this still leaves us to question whether the surcharge laws have a "connection with" the ERISA plans, and here an uncritical literalism is no more help than in trying to construe "relate to." For the same reasons that infinite relations cannot be the measure of preemption, neither can infinite connections. We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.

*Id.* What Congress meant, the Court continued, was to eliminate the prospect of conflict among the federal, state, and local laws applying to employee benefit plans by making the regulation of such plans exclusively a federal matter. *Id.* "The basic thrust of the pre-emption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Id.* — U.S. at —–—, 115 S.Ct. at 1677–78. Consistent with that purpose, the Court in prior cases had deemed preempted state laws that had the

---

**3.** We postponed resolution of this case pending    the Supreme Court's decision in *Travelers*.

effect of regulating the structure or administration of ERISA plans or providing avenues outside of the ERISA framework to vindicate employees' rights under these plans. *Id.* —— U.S. at ——, 115 S.Ct. at 1678.

Turning to the surcharges imposed by New York, the Court acknowledged that the fees, to the extent they were passed on to the purchasers of commercial insurance or HMO membership, likely would have some influence on the type of health care coverage that the sponsors of ERISA plans would pursue. Thus, for example, "[a]lthough there is no evidence that the surcharges will drive every health insurance consumer to the Blues, they do make the Blues more attractive (or less unattractive) as insurance alternatives and thus have an indirect economic effect on choices made by insurance buyers, including ERISA plans." *Id.* —— U.S. at ——, 115 S.Ct. at 1679. But that limited effect alone was not enough to trigger ERISA's preemption clause:

> An indirect economic influence ... does not bind plan administrators to any particular choice and thus function as a regulation of an ERISA plan itself; commercial insurers and HMOs may still offer more attractive packages than the Blues. Nor does the indirect influence of the surcharges preclude uniform administrative practice or the provision of a uniform interstate benefit package if a plan wishes to provide one. It simply bears on the costs of benefits and the relative costs of competing insurance to provide them. It is an influence that can affect a plan's shopping decisions, but it does not affect the fact that any plan will shop for the best deal it can get, surcharges or no surcharges.

*Id.*

There was "nothing remarkable," the Court continued, about hospital bill surcharges and their effect on the costs incurred by health care plans, nor was there anything unusual about charge differentials among commercial insurers, the latter historically having varied greatly from region to region, "presumably reflecting the geographically disparate burdens of providing for the uninsured." *Id.* It was thus unlikely that Congress had meant to preclude, through

ERISA's preemption clause, the indirect economic influences such rate differentials had on employee benefit plans. It was even more unlikely that Congress had meant to interfere with the variety of other state actions that will inevitably affect the benefits provided by ERISA plans—health care quality controls, for example, and even basic employment regulations. *Id.* Such regulations no doubt "will affect what an ERISA or other plan can afford or get for its money," the Court conceded, but it was confident that the indirect effect of these regulations was beyond what Congress meant to regulate through ERISA. *Id.*

> Indeed, to read the preemption provision as displacing all state laws affecting costs and charges on the theory that they indirectly relate to ERISA plans that purchase insurance policies or HMO memberships that would cover such services, would effectively read the limiting language in [the preemption clause] out of the statute, a conclusion that would violate basic principles of statutory interpretation and could not be squared with our prior pronouncement that "[p]reemption does not occur ... if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *District of Columbia v. Greater Washington Board of Trade,* 506 U.S. [——, ——] n. 1, 113 S.Ct. 580, 588 n. 1 [121 L.Ed.2d 513] (1992) (internal quotation marks and citations omitted).... [N]othing in the language of the Act or the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern....

—— U.S. at —— – ——, 115 S.Ct. at 1679–80.

We believe the Court's pragmatic view of the surcharges at issue in *Travelers* to be dispositive here. Like New York, Wisconsin has adopted a regulatory scheme that attempts to render health insurance and health care more accessible to individuals who find it difficult or impossible to obtain them in the private market. The approaches the two states have taken are different: New York has used the surcharge as a device to give a

competitive advantage to a not-for-profit insurer (Blue Cross/Blue Shield) and HMOs with a demonstrated willingness to serve individuals that other carriers and health care providers shun, whereas Wisconsin has taken the more direct route of assessing insurance carriers in order to fund a public insurance pool for the otherwise uninsured. But both approaches have an impact upon ERISA plans to the extent that the surcharges imposed on insurance carriers and health care providers are passed on to ERISA plans.[4] Thus, a Wisconsin employer sponsoring a self-funded employee benefit plan may find it somewhat more expensive to obtain stop-loss coverage as a result of the HIRSP assessment imposed on the insurance companies who provide that coverage. The added expense may in turn reduce or modify the benefits that employer is able or willing to offer through its plan. But the HIRSP assessment has no "reference to" ERISA plans (*see Shaw*, 463 U.S. at 97, 103 S.Ct. at 2900)—it is imposed on insurance carriers based on their sales of health insurance within Wisconsin, without regard to whether such insurance is purchased for an ERISA plan. *See Travelers*, — U.S. at ——, 115 S.Ct. at 1677; *cf. Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 555–56 (6th Cir.1987) (neutral income tax of general application not preempted even as applied to employee income contributed to ERISA plans). Nor do we think the assessment may be said to have a "connection with" ERISA plans. *See Shaw*, 463 U.S. at 97, 103 S.Ct. at 2900. Wisconsin has not attempted to dictate what benefits employers may offer their employees nor interfere with the manner in which those benefits are provided. Indeed, the route Wisconsin has chosen to help the disadvantaged obtain health insurance is arguably less intrusive than New York's scheme insofar as employee benefit plans are concerned, in the sense that Wisconsin has not attempted to steer consumers to particular carriers or HMOs. *Compare Travelers*, — U.S. at —— ——, 115 S.Ct. at 1678–79. Again, the extra expense imposed by the annual HIRSP assessment may make it more burdensome

for employers and the benefit plans they sponsor to obtain insurance, true, but the assessment "leave[s] plan administrators right where they would be in any case, with the responsibility to choose the best overall coverage for the money." *Id.* — U.S. at ——, 115 S.Ct. at 1680. And perhaps the package of benefits will be more modest than what a plan administrator might be able to obtain in a state that does not impose the equivalent of Wisconsin's HIRSP assessment. But in that regard the assessment operates no differently from any number of state regulations that have the consequence of making the benefits provided by employee benefit plans more costly within a particular state (*see id.* at 1679); and "cost uniformity was almost certainly not an object of preemption" (*id.* — U.S. at ——, 115 S.Ct. at 1680). *See also United Wire, Metal, & Mach. Health & Welfare Fund v. Morristown Memorial Hosp.*, 995 F.2d 1179, 1193–94 (3d Cir.), *cert. denied*, — U.S. ——, 114 S.Ct. 382, 126 L.Ed.2d 332 (1993); *Rebaldo v. Cuomo*, 749 F.2d 133, 138–39 (2d Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985); *Lane v. Goren*, 743 F.2d 1337, 1340 (9th Cir.1984). As the *Travelers* case makes plain, the limited type of influence a levy of this nature may have upon ERISA plans is simply too "tenuous, remote, [and] peripheral" to trigger ERISA's preemption clause. *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21; *see Travelers*, — U.S. at —— – ——, 115 S.Ct. at 1679–80; *see also Travelers Ins. Co. v. Pataki*, 63 F.3d 89, 94–95 (2d Cir.1995) (per curiam) (finding on remand that ERISA does not preempt surcharges as imposed on self-insured plans).

### III.

Because the HIRSP assessments imposed by Wisconsin on health insurance carriers do not interfere with the provisions or administration of ERISA plans, the assessments do not "relate to" such plans in a manner significant enough to implicate the preemption clause of the statute. Any indirect effect that the HIRSP assessments may have upon

---

**4.** The statement of uncontested facts submitted by the parties below avers that Safeco will, in fact, pass along the surcharge to its insureds, including employers who have purchased stop-loss coverage for their ERISA plans. R. 29, Schedule A ¶ 22.

employee benefit plans by increasing the cost of insurance purchased for these plans is beyond the purview of ERISA. We therefore agree with the district court that the defendants are entitled to summary judgment on the merits of Safeco's complaint. However, because the district court entered judgment dismissing the complaint for want of jurisdiction (a question we have decided not to reach), we must vacate the judgment of dismissal and remand with directions to enter summary judgment in favor of the defendants.

VACATED AND REMANDED WITH DIRECTIONS.