# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-08-00535-CV

**American National Insurance Company and American National Life Insurance Company of Texas, Appellants**

**v.**

**Texas Department of Insurance; The Honorable Mike Geeslin, Commissioner of Insurance; and The Honorable Danny Saenz, Senior Associate Commissioner, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-04-003621, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw the opinion and judgment issued December 16, 2009, and substitute the following opinion in lieu of the earlier one.

Appellants American National Insurance Company and American National Life Insurance Company of Texas ("the Companies") sued the Texas Department of Insurance ("the Department") seeking a judgment declaring that the Department's interpretation of several insurance code provisions was erroneous. The parties stipulated to the facts and filed cross-motions for summary judgment. The Department alleged that the Companies were incorrect when they reported stop-loss insurance policies that they sold to self-funded employee benefit plans as reinsurance

instead of direct insurance. The district court granted the Department's motion for summary judgment, thereby agreeing with the Department that self-funded plans are not insurers under Texas law. We will reverse the trial court's judgment and render judgment for the Companies.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Companies are insurance companies licensed by the Department to sell insurance in the state of Texas. The Companies sold stop-loss insurance coverage, also known as excess-loss insurance, to various governmental and private self-funded employee benefit plans. The policies at issue were sold by the Companies between 1998 and 2002.[1]

The dispute in this case concerns the classification, for regulatory purposes, of stop-loss insurance policies sold to self-funded employee benefits plans. The Companies have always treated the policies as "reinsurance," which has been defined as "[i]nsurance of all or part of one insurer's risk by a second insurer, who accepts the risk in exchange for a percentage of the original premium." Black's Law Dictionary 1290 (7th ed. 1999). The Department, on the other hand, claims that the policies are *direct* insurance, not reinsurance, because only insurers can purchase reinsurance, and the Department asserts that the self-funded plans are not "insurers" as defined by Texas law. The classification is important because, as the Department concedes, it has no authority to regulate reinsurance, but can and does regulate direct insurance extensively. If the insurance in question is direct insurance, then the law required the Companies to pay certain fees on the sale of direct health insurance that were not required to be paid on reinsurance, seek approval

---

[1] Any references to statutes or rules will be as they existed during 1998 to 2002 unless otherwise noted.

from the Department for their policy contracts, and report the sale of direct insurance differently in their financial and regulatory filings.

A self-funded plan operates by maintaining a pool of funds that are contributed by an employer, the employees of that employer, or both, from which the plan pays covered medical expenses to the employees and their families. The plan accepts the risk of having to pay for its employees' expenses rather than shifting the responsibility for payment entirely to a third-party insurer. Many of these plans qualify as "employee welfare benefit plans" as that term is defined by the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C.A. § 1002(1) (West 2008). Some plans are governmental plans, which are specifically exempted from many provisions of ERISA. *See id.* § 1002(32) (West 2008) (defining governmental plans); § 1003(b)(1) (West 2008) (exempting governmental plans). The Companies sold stop-loss coverage to both types of plans, using the same policy contract for both governmental and non-governmental self-funded plans.

Stop-loss coverage is an insurance product that allows self-funded plans to minimize the chances of catastrophic loss by shifting some of their risk onto an insurance carrier. Such policies generally contain an "attachment point." When an employee covered by a self-funded plan suffers a loss greater than the attachment point, or the plan as a whole has to pay out an amount greater than the total annual aggregate attachment point, the plan pays the employee or employees and then seeks reimbursement from the provider of stop-loss coverage. Stop-loss insurance may reimburse the plan for all of its losses above the attachment point or some percentage as agreed by the insurer and the plan. Stop-loss insurance usually also contains a maximum payment limit, either per employee or in the aggregate or both. A stop-loss policy is a contract made directly between the

3

insurer and the plan or the sponsors of the plan. A stop-loss insurer has no contractual relationship with employees who participate in the self-funded plan.

The Department first discovered the alleged misclassifications during a routine examination of the Companies' finances for the period of January 1, 1998 through December 31, 2002. In its examination report dated October 26, 2004, the Department alleged that the Companies violated former articles 3.10(a) and 3.77 of the Texas Insurance Code by "improperly recording the direct stop-loss policy premiums obtained from the self-insured employers as 'assumed reinsurance'" instead of "direct written premium," and by failing to pay the required fees to the Texas Health Insurance Risk Pool. *See* Act of June 14, 1995, 74th Leg., R.S., ch. 614, § 2, 1995 Tex. Gen. Laws 3468, 3468-69, *repealed by* Act of June 16, 2005, 79th Leg., R.S., ch. 727, § 18(a)(3), 2005 Tex. Gen. Laws 1752, 2186-87 (hereinafter "former Tex. Ins. Code art. 3.10"); Act of June 16, 1989, 71st Leg., R.S., ch. 1094, § 2, 1989 Tex. Gen. Laws 4484, 4484-91, *repealed by* Act of June 21, 2003, 78th Leg., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138 (hereinafter "former Tex. Ins. Code art. 3.77"). The Department also alleged that the Companies violated title 28, section 3.4002 of the Texas Administrative Code, which requires the Companies to submit for review to the Department any policy forms used to issue "all life and accident and sickness" insurance policies, *see* 28 Tex. Admin. Code § 3.4002 (2000) (Tex. Dep't of Ins., All Forms To Be Filed For Review Unless Exempted), and former article 3.42 of the Texas Insurance Code, which contained substantially similar requirements to the administrative rule. *See* Act of May 23, 1995, 74th Leg., R.S., ch. 176, § 1, 1995 Tex. Gen. Laws 1889, 1889-92, *repealed by* Act of June 21, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138 (hereinafter

4

"former Tex. Ins. Code art. 3.42"). The Companies contested the Department's interpretation of the law and sought administrative relief through the Department's two-level administrative appeals process. Both levels of administrative appeals affirmed the Department's interpretation of the law. After exhausting their administrative remedies, the Companies filed suit for declaratory judgment in Travis County district court pursuant to section 2001.038 of the Texas Government Code and section 36.202 of the Texas Insurance Code. *See* Tex. Gov't Code Ann. § 2001.038 (West 2008); Tex. Ins. Code Ann. § 36.202 (West 2009).

The Companies and the Department stipulated to the facts, and both sought summary judgment on their respective interpretations of the relevant law. The Companies requested the trial court to render judgment declaring that: (1) the Companies did not violate former article 3.10(a) of the Texas Insurance Code; (2) the Companies did not violate former article 3.77 of the Texas Insurance Code; (3) the Companies were not required to file their stop-loss policy forms with the Department for review pursuant to title 28, section 3.4002 of the Texas Administrative Code and former Texas Insurance Code article 3.42, nor to file an exemption pursuant to title 28, section 3.4004(e)(2)(J) of the Texas Administrative Code; and (4) the amended final Examination Reports issued by the Department are invalid insofar as they assert that the Companies violated any of the above-referenced statutes and rules. The Companies also requested that the district court enjoin the Department from acting on its conclusions in the examination reports insofar as they are inconsistent with the law. After a hearing, the district court granted the Department's motion, affirmed the Department's examination reports, and denied the Companies' motion. The Companies perfected this appeal.

## STANDARD OF REVIEW

Our review of the Department's findings, rulings, decisions, and orders is based on the substantial evidence standard of review under the Administrative Procedure Act. *See* Tex. Ins. Code Ann. § 36.202 (authorizing judicial review from decision of insurance commissioner); Tex. Gov't Code Ann. § 2001.174 (West 2008) (defining scope of substantial evidence review). When faced with questions of statutory interpretation, our aim is to give effect to the legislature's intent. Tex. Gov't Code Ann. § 312.005 (West 2005); *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). We look first to the plain meaning of the statute, read as a whole. *Mid-Century Ins. Co.*, 243 S.W.3d at 621. We should not read any part of a statute in a way that would invalidate another part. *See id.* (citing *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002)). We give deference to the Department's interpretation of the statutes it is tasked with administering as long as that interpretation is reasonable and does not contradict the plain language of the statute. *City of Corpus Christi v. Public Util. Comm'n*, 51 S.W.3d 231, 261 & n.142 (Tex. 2001); *see also State v. Public Util. Comm'n*, 883 S.W.2d 190, 196 (Tex. 1994) ("[T]he contemporaneous construction of a statute by the administrative agency charged with its enforcement is entitled to great weight."). This is particularly true when the statute deals with complex subject matter that may create ambiguity in the statute. *See City of Plano v. Public Util. Comm'n*, 953 S.W.2d 416, 412 (Tex. App—Austin 1997, no writ). "[I]f the statute can reasonably be read as the agency has ruled, and that reading is in harmony with the rest of the statute, then the court is bound to accept that interpretation even if other reasonable interpretations exist." *Id.*

6

## DISCUSSION

The Companies assert on appeal that the trial court erred as a matter of law when it denied their motion for summary judgment and granted the Department's motion. The parties agree that the resolution of their dispute turns on whether the insurance sold by the Companies to the self-funded plans should be classified under Texas law as reinsurance or direct insurance. The answer to that question depends on whether self-funded plans are insurers under Texas law.

*(i) Statutory interpretation and applicability of former article 3.10*

The parties agree that reinsurance is not regulated by the Department and is not specifically defined in the insurance code. However, former article 3.10 of the insurance code provides a contextual definition. As it existed during the time period relevant to this appeal, former article 3.10 was entitled "May Reinsure." The article was a permissive provision establishing regulatory guidelines for insurers who buy reinsurance to reinsure a risk or part of a risk with another insurer. Former article 3.10(a) stated in pertinent part:

> *Any insurer authorized to do the business of insurance in this state may reinsure in any solvent assuming insurer, any risk, or part of a risk which both are authorized to assume*; provided, however, no credit for reinsurance, either as an asset or a deduction of liability, may be taken by the ceding insurer except as provided in this article, and, provided further, no insurer operating under Section 2(a) of Article 3.02 shall reinsure any risk or part of a risk with any insurer which is not licensed to engage in the business of insurance in this state. *This article applies to all insurers regulated by the State Board of Insurance.* . . . No such insurer shall have the power to reinsure its entire outstanding business to an assuming insurer unless the assuming insurer is licensed in this state and until the contract therefor shall be submitted to the Commissioner and approved by him as protecting fully the interests of all policy

7

holders. . . . *This article is supplementary to and cumulative of other provisions of this code and other insurance laws of this state relating to reinsurance to the extent those provisions are not in conflict with this article.*

Former Tex. Ins. Code art. 3.10(a) (emphases added).

The Companies contend that the self-funded plans are insurers as defined by the insurance code and thus qualify under the contextual definition of former article 3.10(a) to buy reinsurance like any other insurer, allowing the Companies to classify the insurance they sold to the plans as reinsurance. The definition of insurer is found in the section of the insurance code prohibiting the unauthorized business of insurance. An "insurer" is defined under the current code—and was defined by the code for all time periods applicable to this appeal—as a "corporation, association, partnership, or individual engaged as a principal in the business of insurance." Tex. Ins. Code Ann. § 101.002(1)(A) (West 2009). Conduct that constitutes the "business of insurance" is defined broadly and includes the acts of:

(1) making or proposing to make, as an insurer, an insurance contract;

(2) making or proposing to make, as guarantor or surety, a guaranty or suretyship contract as a vocation and not merely incidental to another legitimate business or activity of the guarantor or surety;

(3) taking or receiving an insurance application;

(4) receiving or collecting any consideration for insurance, including:
    (A) a premium;
    (B) a commission;
    (C) a membership fee;
    (D) an assessment; or
    (E) dues;

(5) issuing or delivering an insurance contract to:

8

(A)  a resident of this state; or

(B)  a person authorized to do business in this state;

. . . .

(7) contracting to provide in this state indemnification or expense reimbursement for a medical expense by direct payment, reimbursement, or otherwise to a person domiciled in this state or for a risk located in this state, whether as an insurer, agent, administrator, trust, or funding mechanism or by another method;

(8)  doing any kind of insurance business specifically recognized as constituting insurance business within the meaning of statutes relating to insurance;

. . . .

(10)  any other transaction of business in this state by an insurer.

*Id*. § 101.051 (West 2009).

The Companies argue that because the self-funded plans do most, if not all, of the acts listed in section 101.051, they are insurers under the code.  First, they claim that a plain-meaning interpretation of the insurance code leads to this result.  Second, to buttress their reading of the statute, they assert that the Department's interpretation of the plans as non-insurers would lead to preemption of former article 3.10 by ERISA because it would single out ERISA plans for regulation. This result would then be contrary to legislative intent because, in construing a statute, we must assume the legislature did not intend to pass a meaningless law.  *See* Tex. Gov't Code Ann. § 311.021(4) (West 2005) ("In enacting a statute, it is presumed that . . . a result feasible of execution is intended.").  In this case, the plans make insurance contracts with the employees of the employer sponsors; they collect premiums for their service from the plan sponsor or the employees or both; they deliver insurance contracts to the employees; and they provide expense indemnification,

expense reimbursement, or direct payment of medical expenses to individuals domiciled in this state. Because the self-funded plans do many of the acts that constitute doing the business of insurance, we agree with the Companies' interpretation of the statute and hold that self-funded plans are insurers under Texas law.**2**

Our holding here is in agreement with the Fourteenth Court of Appeals' decision in *Harris County Hospital District v. Alief Independent School District*, No. A14-91-00019-CV, 1992 Tex. App. LEXIS 558 (Tex. App—Houston [14th Dist.] Mar. 5, 1992, writ denied) (not designated for publication). In that case, the court held that a self-funded plan set up by the Alief Independent School District was an insurer under the code. *Id.* at *8. Citing the substantially similar predecessor statute to insurance code section 101.051, the court noted that self-funded plans make insurance contracts, receive insurance applications, receive premiums as consideration for insurance, and deliver insurance contracts. *Id.*

*(ii) Former article 3.10 of the Texas Insurance Code*

Without regard to whether self-funded plans are insurers under Texas law, the Department argues that the plain language of former article 3.10(a) does not permit self-funded plans to purchase reinsurance. As support for this assertion, the Department notes that former article 3.10(a) permitted any "insurer *authorized* to do the business of insurance in this state" to reinsure, and that "[t]his article applies to all insurers regulated by the State Board of Insurance."

---

**2** We do not address whether self-funded governmental risk pools, such as those established pursuant to chapters 119 and 172 of the local government code and chapter 2259 of the government code, are insurers under Texas law. *See* Tex. Loc. Gov't Code Ann. §§ 119.008, 172.014 (West 2008); Tex. Gov't Code Ann. § 2259.037 (West 2008).

Former Tex. Ins. Code art. 3.10(a) (emphasis added). Thus, the Department contends that even if the self-funded plans were insurers under the code, they were not "authorized" insurers as that term is used in the statute because they were not regulated by the Department. Since they were not authorized insurers, the argument goes, former article 3.10 did not apply to them. Because former article 3.10 is the grant of permission to purchase reinsurance and because the plans were not covered within its ambit, they lacked authorization to reinsure. Lacking authorization to purchase reinsurance, the plans were prohibited from doing so.

We agree with the Department that former article 3.10 does not apply to self-funded plans and other non-regulated insurers. However, we do not agree with the Department's conclusion that because former article 3.10 does not apply to the plans in this case they are *prohibited* from purchasing reinsurance. Although not stated by the Department, its conclusion relies on the assumption that without an affirmative legislative grant of permission to the plans to reinsure they lack the right to do so. We think this incorrect for two reasons. First, former article 3.10 is a permissive statute. The mere fact that it authorizes regulated insurers to reinsure does not mean that it forbids non-regulated insurers from reinsuring. The Department does not point us to any other state or federal law that prohibits the plans from reinsuring. Second, ERISA plans do not need the state's permission to reinsure, and an attempt to prevent them from reinsuring would be preempted under ERISA.[3] *See FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990) (when state law subjects plan to state regulations, it has "connection to" ERISA and therefore is preempted); *see also Sharp*

---

[3] We note that our holding in this case is based on Texas statutory law, not federal preemption.

11

*v. Caterpillar, Inc.*, 932 S.W.2d 230, 236 (Tex. App.—Austin 1996, writ denied) (state law is preempted if law specifically targets ERISA plans).

The conclusion that former article 3.10 does not apply to ERISA plans does not affect the ability of the Companies to *sell* reinsurance to the plans, since the statute does not regulate the *seller* of reinsurance. *See* former Tex. Ins. Code art. 3.10(a) (insurer "may reinsure in *any solvent assuming insurer*") (emphasis added). Nor does it negate the ability to use the contextual definition of reinsurance, as found in former article 3.10(a), to classify the policies at issue as reinsurance.

### (iii) Stop-loss insurance is reinsurance in this case

The Department argues that the main issue on appeal is "whether the stop-loss coverage provided by Appellants is stop-loss 'insurance' and whether Appellants were acting as 'insurers' in issuing the stop-loss coverage to the self-funded employers." It appears that the Department is asserting that by selling stop-loss coverage the Companies are "insurers" and not "reinsurers." Accepting this conclusion would require acceptance of an unstated assumption, argued by the Department, that stop-loss insurance cannot be reinsurance under the insurance code. Under that theory, regardless of our decision that self-funded plans are insurers, the Companies must still classify the stop-loss policies at issue here as direct insurance because, by definition, such coverage is *always* direct insurance. For support, the Department cites the insurance code at former article 3.77, which, for purposes of that section, defines insurer as "an entity that provides health insurance in Texas, including stop-loss or excess loss insurance." Former Tex. Ins. Code art. 3.77 § 2(11). The Department cites this as evidence that the legislature considered stop-loss coverage to be a type of health insurance. It cites similar, limited-use definitions from other places in the code,

12

and decisions from other jurisdictions construing their respective states' insurance codes in a manner similar to its own interpretation of Texas law.

The insurance code itself refutes the Department's assertion that stop-loss insurance can never be reinsurance. In at least one other context, the legislature has classified stop-loss insurance as reinsurance. *See* Act of June 17, 1993, 73d Leg., R.S., ch. 685, § 13.02, 1993 Tex. Gen. Laws 2559, 2668, *repealed by* Act of June 21, 2003, 78th Leg., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138 (former Tex. Ins. Code. art. 4.11 § 2(c)) ("For the purposes of this article, a stop-loss or excess loss insurance policy issued to a health maintenance organization . . . shall be considered reinsurance.").

Also, two well-respected secondary authorities cited by the Department undercut the assertion that stop-loss coverage is not reinsurance. Black's Law Dictionary, as quoted by the Department, defines reinsurance as "insurance of all or part of one insurer's risk by a second insurer, who accepts the risk in exchange of a percentage of the original premium." Black's Law Dictionary 1290 (7th ed. 1999). Appleman on Insurance, an often-cited treatise on insurance—as quoted by the Department—states that:

> Reinsurance, to an insurance lawyer, means one thing only—the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contract with the original insured, and handles all matters prior to and subsequent to loss.

13A John Alan Appleman & Jean Appleman, Insurance Law and Practice § 7681, at 479-80 (1976).

13

The way the policies in this case function is undisputed. In exchange for ceding a portion or all of its risk, a self-funded plan pays premiums to the Companies. If a covered loss occurs, the Companies make payments directly to the plans. The Companies have no contact with the individuals insured by the plans. All losses are handled by the plans and then sent to the Companies for indemnification. The Companies do not make coverage decisions with respect to individuals insured by the plans. The Companies have no contractual relationship with the individuals insured by the plans and cannot be sued by them. These are the classic characteristics of reinsurance as defined by Black's and Appleman. The statute gives no indication that the legislature intended stop-loss insurance in this context to have a meaning other than reinsurance. We therefore conclude that the stop-loss insurance in the context of this case is reinsurance. Because the Department's interpretation of the statutes in this care is contrary to their plain meaning, we need not defer to its interpretation. *See City of Corpus Christi*, 51 S.W.3d at 261.

Our holding accords with the Fifth Circuit's decision in *Brown v. Granatelli*, 897 F.2d 1351 (5th Cir. 1990). Analyzing the substantially similar predecessor to current Texas law, the court held that stop-loss insurance purchased by a self-funded plan was not direct accident or sickness insurance, but rather reinsurance. *Id.* at 1353-54. While our holding is based solely on Texas law, cases from other jurisdictions are in agreement that stop-loss insurance is not direct insurance. *See, e.g.*, *United Food & Commercial Workers & Employers Ariz. Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161 (9th Cir. 1986) (holding stop-loss insurance not equivalent to direct health insurance); *Cuttle v. Federal Employees Metal Trades Council*, 623 F.Supp. 1154,

14

1157 (D. Me. 1985) ("Stop-loss insurance is not group health insurance providing insurance to individuals through a sponsor group. Rather, it is insurance obtained to protect self-insurers from risks . . . .")

### (iv) No absurd results

In the court below and at oral argument before this Court, the Department asserted that the Companies' interpretation of the law would set up absurd situations in which any individual who pays healthcare expenses for her family could be an insurer under the code and thus could buy "reinsurance" instead of direct insurance. Allowing the individual to "reinsure" one-hundred percent of her potential loss would bypass regulation of direct health insurance altogether.

This scenario is not possible under the plain language of the statute. An insurer is a "*principal* in the business of insurance." Tex. Ins. Code § 101.002(1)(A) (emphasis added). An individual providing healthcare for her family is not a principal. She is merely self-insured, which means only that the individual herself bears the risk of loss. Self-insured in this context is a misnomer and must not be equated with self-funded. *See Hertz Corp. v. Robineau*, 6 S.W.3d 332, 335-36 (Tex. App.—Austin 1999, no pet.) ("[I]n effect, a self-insurer does not provide *insurance* at all." (Emphasis in original.)). Self-insured simply means that the entity or individual retains the risk of loss instead of shifting it to others. A self-funded plan, on the other hand, is a pool of money made up of contributions from employees or from an employer on the employees' behalf. Instead of paying for their own healthcare expenses out of pocket, employees shift their risk to the plan by paying premiums or having premiums paid on their behalf to the self-funded plan. The plan acts as

15

a principal, providing insurance for the employees. The Department's scenario has neither a principal nor a shifting of risk, and therefore does not establish an "insurer" under Texas law.

### (v) No violation of former article 3.42(a) or rules 3.4002 or 3.4004(E)(2)(J)

We next address whether the Companies violated former article 3.42(a) and rules 3.4002 and 3.4004(E)(2)(J). *See* former Tex. Ins. Code art. 3.42(a); 28 Tex. Admin. Code § 3.4004(E)(2)(J) (2000) (Tex. Dep't of Ins., Exempt Forms); 28 Tex. Admin. Code § 3.4002. Former insurance code article 3.42(a) and rule 3.4002 required the Companies to file certain policy contract forms with the Department for review. The rule only applies to "life and accident and sickness policy forms and annuity contracts." 28 Tex. Admin. Code § 3.4002. Because we hold that the stop-loss insurance sold to self-funded plans is reinsurance, rule 3.4002 and former article 3.42(a) do not apply to the Companies in this case. Rule 3.4004(E)(2)(J) allows insurers to request an exemption from the review process for certain policies. *Id.* § 3.4004(E)(2)(J). The rule applies only to "group and individual accident and/or health policies." This rule does not apply to the Companies in this case for the same reasons that rule 3.4002 does not apply to them.

### (vi) Former article 3.77 fees

Next we turn to whether the Companies improperly failed to pay fees that the Department alleges are due under former article 3.77. The definition of "insurer" under former article 3.77 is broad enough to encompass the Companies in this case. Insurer is defined in the article as

16

any entity that provides health insurance in this state, including stop-loss or excess loss insurance. For the purposes of this article, "insurer" includes but is not limited to an insurance company . . . [and] an insurer providing stop-loss or excess loss insurance to . . . any benefit arrangements to the extent permitted by Section 3, Employee Retirement Income Security Act of 1974.

Former Tex. Ins. Code art. 3.77. That definition is sufficiently broad to encompass all the stop-loss policies sold to ERISA welfare benefit plans.

Having decided that the Companies are insurers for the purposes of former article 3.77 insofar as they sold stop-loss policies to ERISA plans, we must determine if they have to pay fees to the Texas Health Insurance Risk Pool as the Department asserts. The amount any one insurance company must pay bears a relationship to its share of the health insurance premium market in Texas. The statute provides that:

> The assessment imposed against each insurer shall be in an amount that is equal to the ratio of the gross premiums collected by the insurer for *health insurance* in this state during the preceding calendar year . . . to the gross premiums collected by all insurers for *health insurance* . . . in this state during the preceding calendar year.

Former Tex. Ins. Code art. 3.77, § 13(d) (emphasis added). During the relevant time period for this appeal—1998 to 2002—the article defined health insurance in pertinent part as:

> individual or group health insurance [including] any hospital and medical expense incurred policy . . . or any other health care plan or arrangement that pays for or furnishes medical or health care services whether by insurance or otherwise.

*Id.* § 2(7). The definition of "health insurance" does not include any reference to stop-loss or excess-loss insurance despite the fact that "insurer" is specifically defined to include stop-loss

policies. The legislature could have deemed stop-loss insurance to be health insurance for the purposes of this article, but we find no evidence in the text of the statute for that proposition.

We hold that former article 3.77 does not apply to the stop-loss policies sold by the plans in this case. Section 13(d) sets out the ratio by which each insurer must reckon its assessment. Section 13(d) does not prohibit assessing fees on stop-loss policies, but rather is a mandatory instruction from the legislature about how to calculate each insurance company's individual share of the total assessment. If stop-loss insurance was included in the assessment, but not included in the ratio calculation because it is not health insurance, then the true ratio of assessments paid by any one insurer would be different from the ratio set out by the legislature. The stop-loss insurer would be paying into the pool, but none of the other insurers' assessments would be reduced proportionately as section 13(d) requires. Since that result would be contrary to statute, we must conclude that former article 3.77 does not apply to the Companies in this case.

## CONCLUSION

For the foregoing reasons, we sustain the Companies' point of error. We reverse the district court's judgment and render judgment declaring that, by selling the stop-loss policies at issue in this case to self-funded benefits plans and reporting their sale to the Department as a sale of assumed reinsurance: (1) the Companies did not violate former article 3.10(a) of the Texas Insurance Code; (2) the Companies did not violate former article 3.77 of the Texas Insurance Code and thus were not required to pay assessments to the Texas Health Insurance Risk Pool for the premiums received for the policies at issue in this case; (3) the Companies did not violate former article 3.42 of the Texas Insurance Code and its associated rules, title 28, sections 3.4002 and

18

3.4004(e)(2)(J) of the Texas Administrative Code; and (4) the Department's amended Final Examination reports of October 26, 2004 are invalid insofar as they contradict our holdings in this opinion.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Reversed and Rendered on Motion for Rehearing

Filed:   April 22, 2010