STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 0745

VICTORIA LEET, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED

VERSUS

HOSPITAL SERVICE DISTRICT NO. 1 OF EAST BATON ROUGE
PARISH, LOUISIANA D/B/A LANE REGIONAL MEDICAL
CENTER; ALEGIS REVENUE SOLUTIONS, LLC; AND
LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY D/B/A
BLUE CROSS AND BLUE SHIELD OF LOUISIANA

Judgment Rendered:  **FEB 2 5 2021**

* * * * *

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 639818

Honorable Donald R. Johnson, Judge Presiding

* * * * *

J. Lee Hoffoss, Jr.                      Attorneys for Plaintiff-Appellant
Donald W. McKnight                       Victoria Leet, Individually and on
Lake Charles, LA                         behalf of all others similarly situated

Derrick G. Earles
Lafayette, LA

Scott R. Bickford
Lawrence J. Centola, III
New Orleans, LA

Andrew J. D'Aquilla
St. Francisville, LA

Thomas R. Temple, Jr.
David R. Kelly
Joseph J. Cefalu
Baton Rouge, LA

Attorneys for Defendant-Appellee,
Hospital Service District No. 1 of East
Baton Rouge Parish, Louisiana d/b/a
Lane Regional Medical Center

\* \* \* \* \*

BEFORE: THERIOT, WOLFE, AND HESTER, JJ.

**HESTER, J.**

Plaintiff, Victoria Leet, appeals a judgment granting a motion for reconsideration and a motion for summary judgment filed by defendant, Hospital Service District No. 1 of East Baton Rouge Parish, Louisiana d/b/a Lane Regional Medical Center, thereby dismissing all of plaintiff's claims, with prejudice. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

This matter initially came before this court on appeal filed by plaintiff. **Leet v. Hospital Service District No. 1 of East Baton Rouge Parish**, 2018-1148 (La. App. 1st Cir. 2/28/19), 274 So.3d 583 ("**Leet I**"). The applicable prior factual and procedural history, as set forth in **Leet I**, is as follows:

> On May 29, 2014, Victoria Leet was injured in an automobile accident and received treatment at Hospital Service District No. 1 of East Baton Rouge Parish, Louisiana d/b/a Lane Regional Medical Center (referred to herein as "Lane Regional"). At the time of the accident, Leet was insured under the comprehensive medical benefit plan of her husband's employer, Louisiana Machinery Company, LLC. Through a contract between Louisiana Machinery and Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("Blue Cross"), Louisiana Machinery's self-funded plan was administered by Blue Cross, and Louisiana Machinery purchased access to the Blue Cross contracted healthcare provider network, which allows its insureds to seek treatment from network providers at the contracted reimbursement rate. Thus, as a covered beneficiary of a plan participant, Leet was able to obtain treatment from specific providers within the Blue Cross preferred provider network for a reduced rate, with her only responsibility being the applicable copay, deductible, or coinsurance. Lane Regional is a contracted health care provider with Blue Cross. Pursuant to its provider agreement with Blue Cross, Lane Regional contractually agreed to accept these reduced rates as payment in full for services provided to Blue Cross insureds.
>
> At the time of treatment, Leet presented her Blue Cross insurance card to Lane Regional. However, on June 24, 2014, prior to submitting a claim for its services to Blue Cross, Lane Regional, through its accounts receivable contractor, asserted a lien, by sending medical lien letters to Leet and her attorney, for the full, **undiscounted** amount of $8,789.35 against any tort recovery Leet may receive from a third party as a result of the automobile accident. By check dated August 21, 2014, USAgencies Casualty Insurance Company ("USAgencies"), the third-party automobile liability insurer, issued a payment to Lane Regional for $8,789.35, the full amount of the lien.

3

Meanwhile, on July 15, 2014, several weeks after asserting the lien, Lane Regional filed an insurance claim with Blue Cross, seeking reimbursement for the services provided to Leet. Thereafter, on September 16, 2014, after initially "pend/denying" the claim while awaiting additional information, Blue Cross paid Lane Regional for the claim at the reduced, contracted reimbursement rate of $1,477.74. Despite efforts by Leet's attorney to have Lane Regional reimburse Leet the full amount of any payment over the reduced, contracted rate for the services provided, Lane Regional retained the full, undiscounted payment from USAgencies. With regard to the payment of the reduced, contracted rate from Blue Cross, Lane Regional, after first attempting to return the $1,477.74 payment to Blue Cross, issued a refund to Leet on December 1, 2014, in the amount of $1,477.74, as reimbursement of the overpayment on her account.

Thereafter, on December 10, 2014, Leet filed a petition styled "Class Action Petition for Payment of a Thing Not Due, for Damages, for Declaratory Relief, and for Injunctive Relief" in the Twentieth Judicial District Court. Through original and amending petitions, Leet named as defendants Lane Regional; Alegis Revenue Group, LLC,[1] Lane Regional's accounts receivable contractor; and Blue Cross.

[1]Alegis Revenue Group, LLC was at times improperly referred to as "Alegis Revenue Solutions, LLC" and "Alegis Corporation" in the petitions.

Regarding the claims against Lane Regional, Leet, individually and on behalf of the class, alleged that Lane Regional, in filing a lien and collecting the full, undiscounted rate for services provided to Leet, violated LSA-R.S. 22:1874 of the Balance Billing Act and that, as a result of these allegedly illegal billing practices by Lane Regional, she and those similarly situated were entitled to repayment of all overpayments, damages for mental anguish and emotional distress, loss of profits or use, out-of-pocket expenses, and all other damages allowed by law, as well as attorney's fees, costs, and expenses. Leet, individually and on behalf of all others similarly situated, also sought declaratory judgment, declaring that the practices of Lane Regional were in violation of law and in breach of contract and that all actions at law asserted by Lane Regional be deemed unenforceable and cancelled, and preliminary and permanent injunctive relief, enjoining Lane Regional from refusing to accept a patient's health insurance when a patient has been involved in a liability accident and from maintaining actions at law in violation of LSA-R.S. 22:1874.

Subsequently, on December 15, 2014, five days after Leet filed suit, but before service was perfected on Lane Regional, Lane Regional issued a second payment to Leet in the amount of $7,211.61, representing the remaining sums it had retained over the contractually reduced reimbursement rate less Leet's $100.00 copayment.

After transfer of the suit from the Twentieth Judicial District Court to the Nineteenth Judicial District Court, removal of the suit to federal court, and a remand back to the state district court, Lane Regional filed a motion for summary judgment on February 23, 2018,

4

contending that it was entitled to judgment in its favor as a matter of law, dismissing plaintiff's claims against it. Specifically, Lane Regional contended that: (1) as a public entity, it was entitled to immunity pursuant to LSA-R.S. 9:2798.1; (2) it did not violate the Balance Billing Act, nor was plaintiff entitled to general damages for its alleged violation of the Act; (3) plaintiff's claims were moot because she received full redress from Lane Regional; and (4) Lane Regional did not breach any "contract" or "quasi-contract" for which plaintiff would have a claim against it, nor did plaintiff sustain any compensable damages for any alleged breach.

Following a hearing on the motion, the trial court found that Leet's claims were moot because Lane Regional had reimbursed her "all amounts that could conceivably be due to her" and, thus, pretermitted ruling on Lane Regional's remaining arguments in support of its motion. Because Leet was the only identified class representative, the trial court, by judgment dated April 18, 2018, granted Lane Regional's motion for summary judgment and dismissed Leet's claims against it with prejudice.

**Leet I**, 274 So.3d at 584-86. Plaintiff appealed the judgment dismissing all claims against Hospital Service District No. 1 of East Baton Rouge d/b/a Lane Regional Medical Center ("Lane Regional"), and this court reversed, finding that material issues of fact existed and that defendant had not addressed all of plaintiff's claims for relief. **Id.** at 591.

On remand, Lane Regional, as the sole remaining defendant,[1] filed a second motion for summary judgment and sought to have plaintiff's claims against it dismissed on the basis that: (1) Lane Regional, as a public entity, is entitled to immunity from liability under La. R.S. 9:2798.1 and (2) Lane Regional did not violate the Balance Billing Act,[2] La. R.S. 22:1871, *et seq.*, as the Act is inapplicable. These two issues were raised in the original summary judgment; however, neither the trial court nor this court reached the merits of the applicability of the Balance

---

[1] Plaintiff's claims against Alegis Revenue Group, LLC were previously dismissed through an exception of no cause of action (dismissing plaintiff's claims under the Balance Billing Act) and a motion for judgment on the pleadings (dismissing plaintiff's claims under the Fair Debt Collection Practices Act). See **Leet v. Hospital Service District No. 1 of East Baton Rouge Parish, Louisiana**, 15-811, 2016 WL 3554975 (M.D. La. June 23, 2016); see also **Leet v. Hospital Service District No. 1 of East Baton Rouge Parish**, 15-811, 2017 WL 3782780 (M.D. La. Aug. 31, 2017). Thereafter, plaintiff sought and obtained the dismissal, without prejudice, of all claims asserted against Blue Cross.

[2] The title of the statute is the "Health Care Consumer Billing and Disclosure Protection Act," but is more commonly referred to as the "Balance Billing Act."

5

Billing Act or immunity.[3] A hearing was held by the trial court at which time the motion was denied.

Thereafter, Lane Regional filed a motion for reconsideration of the denial of the second motion for summary judgment, urging that the Balance Billing Act was not applicable under the particular facts of this case. By this time, plaintiff had filed the motion for class certification, and the two motions were set for hearing on the same date. After the hearing, the trial court took both motions under advisement. The trial court later granted the motion for reconsideration, thereby granting Lane Regional's second motion for summary judgment, and denied plaintiff's motion for class certification. On November 12, 2019, the trial court signed a judgment in favor of Lane Regional, denying the motion for class certification, granting the motion for reconsideration as well as the second motion for summary judgment, and dismissing all claims of plaintiff, with prejudice.

It is from the November 12, 2019 judgment that plaintiff appeals and submits the following assignment of errors: (1) the trial court erred in granting the second motion for summary judgment and dismissing the matter when genuine issues of material fact remain;[4] (2) Lane Regional failed to address plaintiff's claims for declaratory judgment or injunctive relief in the second motion for summary judgment; and (3) the trial court erred in concluding plaintiff was not entitled to protection from balance billing in contravention of the Balance Billing Act.

## MOTION FOR SUMMARY JUDGMENT

---

[3] This court acknowledged the other issues raised in Lane Regional's original motion for summary judgment but noted that the trial court specifically pretermitted consideration of those issues. Because Lane Regional failed to fully brief those issues on appeal, this court declined to address the alternate arguments. **Leet I**, 274 So.3d at 591 n.6.

[4] Notwithstanding plaintiff's assertion that issues of fact remain as to damages and entitlement to costs and attorney's fees, these issues of fact are not material to the issues presented in the second motion for summary judgment. Material facts are those that potentially insure or preclude recovery, affect the litigant's success, or determine the outcome of a legal dispute. **Daniels v. USAgencies Casualty Insurance Company**, 2011-1357 (La. App. 1st Cir. 5/3/12), 92 So.3d 1049, 1055. This assignment of error is without merit.

6

The motion for summary judgment is the procedural device utilized when no genuine issue of material fact exists for all or part of the relief prayed for by a party. **Murphy v. Savannah**, 2018-0991 (La. 5/8/19); 282 So.3d 1034, 1038. On appeal, a summary judgment is reviewed *de novo*, with the appellate court using the same criteria governing the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether any genuine issue of material fact exist and whether the mover is entitled to judgment as a matter of law. **Id**. Pursuant to La. C.C.P. art. 966(A)(3), "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law."

Importantly, the burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). Notwithstanding, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

In this matter, the burden of proving the applicability of the Balance Billing Act would rest with plaintiff at trial, as plaintiff asserted a private right of action under the Act. Therefore, as mover on summary judgment, Lane Regional only needed to show the absence of factual or legal support for plaintiff's claims made pursuant to the Balance Billing Act.

## LAW AND ANALYSIS

7

All of plaintiff's claims for relief against Lane Regional center upon the applicability of the Balance Billing Act.[5] When determining the meaning and application of a statute, the rules of statutory interpretation must be observed. **In re Succession of Faget**, 2010-0188 (La. 11/30/10); 53 So.3d 414, 419. The starting point for the interpretation of a statute is the language of the statute itself. **Id.** at 420. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision is applied as written with no further interpretation made in search of the legislature's intent. **Id**; La. C.C. art. 9; La. R.S. 1:4.

Pursuant to the Balance Billing Act, a health care provider is prohibited from collecting or attempting to collect amounts from an insured patient in excess of the contracted reimbursement rate. La. R.S. 22:1874(A)(1). Section 1874 of the Act provides, in pertinent part:

> A. (1) A contracted health care provider shall be prohibited from discount billing, dual billing, attempting to collect from, or collecting from an enrollee or insured a health insurance issuer liability or any amount in excess of the contracted reimbursement rate for covered health care services.
>
> (2) No contracted health care provider shall bill, attempt to collect from, or collect from an enrollee or insured any amounts other than those representing coinsurance, copayments, deductibles, noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer on an explanation of benefits as an amount for which the enrollee or insured is liable.
>
> \*      \*      \*
>
> B. No contracted health care provider may maintain any action at law against an enrollee or insured for a health insurance issuer liability or for payment of any amount in excess of the contracted reimbursement rate for such services. In the event of such an action, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorney fees and court costs. However, nothing in this Subsection shall be construed to prohibit a contracted health care provider from

---

[5] Specifically, in her prayer for relief, plaintiff seeks the following: (1) a judgment declaring Lane Regional in violation of the laws due to its practices (and has breached its contract with various health care insurance companies); (2) a judgment declaring that all actions at law asserted by Lane Regional should be deemed unenforceable and cancelled and Lane Regional is owed no money relative to those actions at law; (3) a preliminary and permanent injunction enjoining Lane Regional from engaging in the practice of refusing to accept a patient's health insurance when a patient has been involved in a liability accident; (4) a preliminary and permanent injunction enjoining Lane Regional from maintaining actions at law in violation of La. R.S. 22:1871, *et seq.*; and (5) damages, attorney's fees, and costs.

8

maintaining any action at law against an enrollee or insured after a health insurance issuer determines that the health insurance issuer is not liable for the health care services rendered.

Accordingly, the Act makes unlawful certain actions taken by a "contracted health care provider" against an "enrollee" or "insured" as those terms are defined in the Act. An insured (or enrollee) has an implied right of action under the Balance Billing Act grounded in individual restitution, as well as an express right of action under La. R.S. 22:1874(B), when a contracted health care provider violates the Act. See **Anderson v. Ochsner Health Systems**, 2013-2970 (La. 7/1/14), 172 So.3d 579, 583-86.

Section 1872(11) of the Balance Billing Act defines "enrollee" or "insured" as "a person who is enrolled in or insured by a health insurance issuer for health insurance coverage." Further, the Act defines "health insurance issuer" as follows:

[A]ny entity that offers health insurance coverage through a policy or certificate of insurance subject to state law that regulates the business of insurance. For purposes of this Subpart, a "health insurance issuer" shall include a health maintenance organization, as defined and licensed pursuant to Subpart I of Part I of Chapter 2 of this Title, nonfederal government plans subject to the provisions of Subpart B of this Part, and the Office of Group Benefits.

La. R.S. 22:1872(19).

Pursuant to La. R.S. 22:1872(6), a "contracted health care provider" is "a health care provider that has entered into a contract or agreement directly with a health insurance issuer or with a health insurance issuer through a network of providers for the provision of covered health care services." Under this broad definition, Lane Regional is most assuredly a "contracted health care provider". However, whether or not Lane Regional is "contracted health care provider" is not determinative of the issues presented in this case.

In order for plaintiff to prevail in her claims, she must establish that the Balance Billing Act applies, which, at a minimum, requires her to establish that she is a person who was enrolled in or insured by a health insurance issuer for health insurance coverage. The main focus of Lane Regional's second motion for summary

9

judgment was plaintiff's inability to establish that she was either an enrollee or an insured as defined in the Act, emphasizing that plaintiff was not enrolled in or insured by a "health insurance issuer".

The material facts relative to the application of the Balance Billing Act are not genuinely in dispute by the parties. Plaintiff received health care services at Lane Regional as a result of injuries received in an automobile accident in 2014. At that time, plaintiff had health benefits through Louisiana Machinery's self-funded group plan, and Blue Cross served as the third-party administrator for the plan. Prior to submitting the claim for health care services to Blue Cross for payment, Lane Regional had a lien asserted for the full, undiscounted bill for services against any tort recovery that plaintiff may receive as a result of the automobile accident. (V.3, 556).

Lane Regional maintains that plaintiff was not enrolled in or insured by a "health insurance issuer" because her benefits were received under a self-funded group plan. As we previously noted, "health insurance issuer" is defined as "any entity that offers health insurance coverage through a policy or certificate of insurance subject to state law that regulates the business of insurance." La. R.S. 22:1872(19). While Louisiana Machinery is an entity offering health insurance coverage,[6] the health insurance coverage provided is not through a policy or certificate of insurance subject to state law that regulates the business of insurance.

In fact, it is not genuinely disputed that the applicable employer plan is subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. See **Leet v. Hospital Service District No. 1 of East Baton Rouge Parish**, 15-811, 2017 WL 3782780 (M.D. La. Aug. 31, 2017); see also 29 U.S.C. 1003. ERISA was enacted to protect the interest of those participating in employee benefit plans

---

[6] Health insurance coverage is defined broadly as "benefits consisting of medical care provided or arranged for directly, through insurance or reimbursement, or otherwise, and includes health care services paid for under any plan, policy, or certificate of insurance." La. R.S. 22:1872(18).

10

and their beneficiaries and provides a uniform regulatory regime over employee benefit plans. **Aetna Health Inc. v. Davila**, 542 U.S. 200, 208; 124 S.Ct. 2488, 2495; 159 L.Ed.2d 312 (2004); 29 U.S.C. 1001(b).

Pursuant to ERISA's deemer clause, 29 U.S.C. § 1144(b)(2)(B), ERISA plans are expressly prohibited from being deemed an insurance company or other insurer for purposes of any state law purporting to regulate insurance companies or contracts. In **FMC Corp. v. Holliday**, 498 U.S. 52, 61; 111 S.Ct. 403, 409; 112 L.Ed.2d 356 (1990), the United State Supreme Court held that the deemer clause exempted self-funded ERISA plans, like the Louisiana Machinery plan in this case, from state laws regulating insurance within the meaning of the savings clause[7] such that self-funded ERISA plans are exempt from state regulation insofar as that regulation relates to the plans.[8]

It cannot be said that the health insurance coverage provided to plaintiff is offered through "a policy or certificate of insurance subject to state law that regulates the business of insurance," as the coverage is offered through a self-funded ERISA plan. A self-funded ERISA plan, like the Louisiana Machinery plan, cannot be subject to state laws regulating the business of insurance, and cannot be considered a health insurance issuer. **FMC Corp.**, 498 U.S. at 61; 111 S.Ct. at 409. While the

---

[7] The savings clause, 29 U.S.C. § 1144(b)(2)(A), provides that nothing in the ERISA statutes shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities, except as provided in 29 U.S.C. § 1144(b)(2)(B).

[8] The Supreme Court further explained as follows:

> State laws directed toward the [self-funded employee benefit] plans are pre-empted because they relate to an employee benefit plan but are not "saved" [pursuant to 29 U.S.C. § 1144(b)(2(A)] because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation. An insurance company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.

**FMC Corp.**, 498 U.S. at 61; 111 S.Ct. at 409.

second portion of the definition provided in La. R.S. 22:1872(19) mandates that "a health maintenance organization, as defined and licensed pursuant to Subpart I of Part I of Chapter 2 of this Title, nonfederal government plans subject to the provisions of Subpart B of this Part, and the Office of Group Benefits" be considered "health insurance issuers" for purposes of the Balance Billing Act, Louisiana Machinery does not fall within any of these categories.[9] Therefore, Louisiana Machinery is not a health insurance issuer as that term is defined in La. R.S. 22:1872(19).[10]

Plaintiff was not enrolled in or insured by a "health insurance issuer" for health insurance coverage and does not meet the definition of "enrollee" or "insured." Consequently, plaintiff cannot maintain a private right of action under the Balance Billing Act. Plaintiff's argument that the trial court erred in determining that she did not fall within the purview of the Act lacks merit.

Additionally, plaintiff maintains that the trial court erred in dismissing all of her claims, including claims for injunctive and declaratory relief, because Lane Regional failed to raise these issues in its second motion for summary judgment, citing **Leet I**, 274 So.3d at 590-91. We disagree. All of plaintiff's claims for relief against Lane Regional, including those for injunctive[11] and declaratory relief, were based on the same theory of recovery and dependent upon the applicability of the

---

[9] Despite plaintiff's arguments to the contrary, the employee plan provided by a private company in this case is not a "nonfederal governmental plan".

[10] Plaintiff further maintains that Blue Cross is a health insurance issuer under the Balance Billing Act, but glosses over Blue Cross' role as the third-party administrator in its arguments. That Blue Cross is, in other instances, a health insurance issuer under La. R.S. 22:1872(19) does not transform plaintiff into an enrollee or insured in this case.

[11] Notwithstanding the inapplicability of the Balance Billing Act, it does not appear that plaintiff would be entitled to injunctive relief. Pursuant to La. C.C.P. art. 3601, injunctive relief is granted in cases where irreparable injury, loss, or damage may otherwise result to the applicant. Irreparable injury is defined as a loss that cannot be adequately compensated in monetary damages or is not otherwise susceptible to measurement by a pecuniary standard. **In re Interdiction of Wright**, 2013-0862 (La. App. 1st Cir. 3/27/14), 144 So.3d 7, 12, writ denied, 2014-0832 (La. 6/20/14), 141 So.3d 810 (citing **Shaw v. Hingle**, 94-1579 (La. 1/17/95), 648 So.2d 903, 905).

Balance Billing Act, which was an issue not considered by this court in **Leet I**.[12] **Leet I**, 274 So.3d at 591 n.6. Because the Act does not apply, plaintiff's claims against Lane Regional in this case cannot be maintained. Lane Regional was entitled to judgment as a matter of law, and we find no error in the trial court's granting of Lane Regional's second motion for summary judgment and dismissal of all of plaintiff's claims.[13]

## CONCLUSION

Based on the foregoing reasons, we affirm the November 12, 2019 judgment of the trial court granting the motions for reconsideration and summary judgment in favor of Hospital Service District No. 1 of East Baton Rouge Parish, Louisiana d/b/a Lane Regional Medical Center and dismissing all of plaintiff's claims, with prejudice. All costs of this appeal are assessed to plaintiff, Victoria Leet.

**AFFIRMED.**

---

[12] Likewise, plaintiff's class action fails as she is no longer a member of the defined class. The class was defined, in part, as persons with "health insurance coverage" as defined in La. R.S. 22:1872(18) with any "health insurance issuer" as defined in La. R.S. 22:1872(19).

[13] We pretermit consideration of the applicability of immunity pursuant to La. R.S. 9:2798.1 in light of our finding that Balance Billing Act does not apply.